(70 Misc. Rep. 433.)

### PEOPLE v. ROSENHEIMER.

(Court of General Sessions, New York County. January, 1911.)

1. WITNESSES (§ 293*)—PRIVILEGE—INCRIMINATING TESTIMONY—STATUTES—CONSTITUTIONALITY.

Laws 1910, c. 374, § 290, subd. 3, declares that any person operating a motor vehicle, who, knowing that injury has been caused to a person or property by the operator's culpability or to accident, leaves the place of the injury or accident without stopping and giving his name, residence, including street number, and operator's license number to the injured person, or to a police officer, or, in case there is no officer in the vicinity, fails to report same to the nearest police station or judicial officer, shall be guilty of a felony, *held* violative of Const. art. 1, § 6, providing that no person shall be compelled in any criminal case to be a witness against himself.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1009–1014; Dec. Dig. § 293.*]

2. WITNESSES (§§ 300, 298, 293½*)—PRIVILEGE—"ANY CRIMINAL CASE."

The word "witness," as used in Const. art. 1, § 6, declaring that no person shall be compelled in any criminal case to be a witness against himself, applies to one potentially able to give testimony to one called on to testify, and to. one required to furnish documentary proof, and the phrase "in any criminal case" applies to proceedings under the executive, legislative, or judicial powers of .government directed against the person invoking the provision, or against co-offenders with such person, or against unrelated third persons, to such as are preliminary, collateral, or independent, and both to such as are pending and' not pending at the time of the assertion of the privilege.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1042, 1038, 1011; Dec. Dig. §§ 300, 298, 293½.*

For other definitions, see Words and Phrases, vol. 1, p. 420; vol. 8, pp. 7511–7513.]

3. WITNESSES (§ 300*)—PRIVILEGE—DISCLOSURES PRIVILEGED.

Const. art. 1, § 6, declaring that no person shall be compelled in any criminal case to be a witness against himself, protects a witness against the disclosure not only of admissions which per se evidence criminality, but also statements which by a possibility may form a link in what might be a ,chain of inculpating evidence, and to disclosures which apart from the fact disclosed might reveal to the inquirer independent sources of information tending to establish the guilt of the person invoking the privilege.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1042; Dec. Dig. § 300.*]

4. WITNESSES (§ 300*)—PRIVILEGE—CONSTITUTIONAL PROVISION—COMPELLED IN ANY CRIMINAL CASE TO BE A "WITNESS AGAINST HIMSELF."

The phrase "nor shall he be compelled in any criminal case to be a witness against himself" is used in Const. art. 1, § 6, guarantying the

privilege of a witness, means that no person shall be compelled to give utterance to any fact by word or pen which utterance might then or afterward be used as evidence against him in a proceeding then pending or afterwards to be brought.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1042; Dec. Dig. § 300.*

For other definitions, see Words and Phrases, vol. 8, pp. 7511–7513.]

5. WITNESSES (§§ 300, 298*)—PRIVILEGE—STATUTES.

The constitutional guaranty against self-accusation, applies to anything required to be said or produced which is receivable in evidence; it being immaterial whether it be an oral statement provable against interest or a document receivable in evidence for a like purpose.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1042, 1038; Dec. Dig. §§ 300, 298.*]

Indictment by the People against Edward T. Rosenheimer. Demurrer sustained.

Charles S. Whitman, Dist. Atty. (Robert C. Taylor, of counsel), for the People.

James W. Osborne and Gilbert D. Lamb, for defendant.

CRAIN, J. The defendant demurs to an indictment purporting to charge him with a felony in the violation of a provision contained in subdivision 3 of section 290 of chapter 374 of the Laws of 1910, commonly called the "Callan Law." The demurrant challenges the constitutionality of such provision, and, moreover, contends that the allegations in the indictment fail to allege and negative a violation of such law.

[1] The material portions of the statute are that:

"Any person operating a motor vehicle who, knowing that injury has been caused to a person or property, due to the culpability of the said operator, or to. accident, leaves the place of said injury or accident, without stopping and giving his name, residence, including street and street number, and operator's license number to the injured party, or to a police officer, or in case no police officer is in the vicinity of the place of said injury or accident, then reporting the same to the nearest police station, or judicial officer, shall be guilty of a felony. * * *" /

These words form part of a new article in relation to motor vehicles inserted by way of amendment to the highway law. Section 295 of article 11 of that law (Laws of 1909, c. 30, being chapter 25 of the Consolidated Laws), repealed by the law now challenged as to constitutionality, provided that "in case of accident to a person or property on the public highway, due to the operation thereon of a motor vehicle, the person operating such vehicle shall stop, and, upon request of a person injured or any person present, give such person his name and address, and if not the owner, the name and address of such owner," while section 307 of the same law made a violation of this provision a misdemeanor.

These provisions followed by a few years the extensive use of motor vehicles and first appeared in 1904. Laws of 1904, c. 538. Similar laws were enacted at about the same time in Maine, New Jersey, Michigan, Florida, California, and other states.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The provision under consideration is limited by its context to injuries inflicted upon public highways and by proper construction to such as are caused directly or indirectly by the motor vehicle operated.

The constitutional provision invoked by the demurrant forms part of section 6 of article 1 of the Constitution of this state, commonly called the "Bill of Rights." It reads, "nor shall he be compelled in any criminal case to be a witness against himself." The common law protects against compulsory self-accusation. Declaratory statutes enforce and apply this protection, and the constitutional provision quoted safeguards it from impairment or abolition by legislative enactment. History discloses the origin of the common-law rule, and the reasons for it are stated in judicial opinions. The constitutional provision referred to has often been judicially construed and applied. In some of these cases there was no mandatory statute requiring self-accusation, and in some such the primary question was the bona fides of the interposition of the plea of privilege, as for instance, whether it was merely invoked to screen or shield third parties. In another class of cases the breadth and scope of this constitutional provision was considered by comparing it with statutes making compulsory the giving of self-incriminating evidence and purporting to afford to the one so testifying immunity from criminal prosecution predicated upon his disclosures. In these the primary subject of consideration was whether the breadth and scope of the immunity provision was coextensive with the constitutional exemption. But, under whatever circumstances construed, it has invariably been held that its interpretation is to be liberal rather than literal, and broad rather than narrow.

Where the immunity from prosecution afforded by statute is not coextensive with the constitutional provision, a person may decline to make when asked what he, in good faith, believes may become self-accusatory disclosures, whether oral or documentary, sworn or unsworn, and although the demand that he make the same is preferred before even the initiation of a purely collateral preliminary inquiry. In aid of such declination, he may lawfully move to set aside a subpœna served, or disobey it and contest its validity in proceedings to punish him as for contempt. He may, if a party, decline to be sworn or affirmed, and, whether a party or mere witness, may assert his privilege when interrogated upon oath, and, so acting, he is at every step protected by the principle of the common law as preserved and safeguarded by the Constitution.

[2] The word "witness" as used in the constitutional provision, although never judicially defined, has been applied in the cases to one potentially able to give testimony to one called upon to testify and to one required to furnish documentary proof. The phrase "in any criminal case," as so used, has been judicially applied to proceedings under the executive, legislative, or judicial powers of government directed against the person invoking the provision, or against co-offenders with such person, or against unrelated third parties, to such as are preliminary, collateral, or independent, and both to such as are pending and not pending at the time of the assertion of the privilege.

[3] With respect to subject-matter, disclosures protected against include not merely admissions per se evidencing criminality, but also statements by possibility forming a link in what might be a claim of inculpating evidence and to disclosures which, apart from the fact disclosed, might reveal to the inquirer independent sources of information tending to establish the guilt of the person invoking the constitutional provision.

[4] In a word, the phrase "nor shall he be compelled in any criminal case to be a witness against himself" has been adjudicated to mean that no man shall be compelled to an utterance of any fact by word or pen which utterance might then or afterward be used as evidence against him in proceedings then pending or afterward to be brought. A similar provision applicable to proceedings in the federal courts is found in the fifth amendment to the Constitution of the United States.

While reference is made to six illustrative cases, this decision rests upon analogy rather than precedent, as no case has adjudicated upon the constitutionality of the law which the people charge the defendant violated.

In 1861 one Hackley was sworn as a witness before the grand jury on an examination of a complaint against certain aldermen and others for feloniously receiving a gift of money under an agreement that their votes should be influenced thereby. Being interrogated, he declined to answer some questions on the alleged ground that any answers which he could give would disgrace him, and have a tendency to accuse him of crime. The questions were adjudged proper. He still declined to answer, and was adjudged in contempt and sentenced to imprisonment. He brought habeas corpus and certiorari proceedings, was remanded to custody by the Supreme Court, and appealed to the Court of Appeals. He invoked the constitutional provision in question. It was urged that it did not avail him, because, while being compelled to testify by statute, he was afforded immunity from prosecution by chapter 539 of the Laws of 1853. Denio, J., in the Court of Appeals, after stating what would be a literal construction of the constitutional provision, held that it was not to be so construed, but that in the light of the protection which it was designed to give it should be liberally construed, and that so construed it applied not merely to a proceeding in which the witness was himself a defendant, but to a proceeding against others answering to the description of co-offenders; but that an objection to answering on the ground that the immunity afforded did not extend to prosecutions against the relator which might have their origin in independent sources of information disclosed to the prosecutor incidentally through the relator's replies was unavailing, as the constitutional provision did not protect to that extent, and the relator in such event would suffer from the misfortune of his situation rather than from any inhumanity in the law. People ex rel. Hackley v. Kelly, 24 N. Y. 74.

In 1887 one Sharp was required to appear and give testimony before a legislative committee charged by resolution with the investigation of the alleged bribery of certain members of the common council of

the city of New York.  Sharp was thereafter indicted with others for giving money to a member of such council with intent to influence him in respect to the exercise of his powers as such.  Upon his trial on this charge, there was given in evidence against him, over his objection and exception, the testimony given by him before the investigating committee.  It was urged in support of a judgment of conviction that such testimony was properly received because voluntarily given, and that in the giving of it the defendant had waived his privilege.  The defendant-appellant contended that his disclosures before the senate committee were privileged, that they were not voluntary, and that he was protected from prosecution by various immunity statutes, including section 79 of the then Penal Code.  In discussing the scope of the constitutional provision, Danforth, J., in delivering the opinion of the court, commented upon the fact that, where a statutory indemnity is relied upon as validating a provision making self-accusation compulsory, the indemnity must be as broad as the constitutional exemption, and discussed the extent of such exemption by commenting upon and reasserting the rule stated in the Hackley Case.  People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851.

In 1894 one Taylor was convicted of a criminal contempt in refusing to answer questions while testifying before a grand jury, and, being committed for such contempt, obtained a writ of certiorari. This being dismissed by the General Term of the Supreme Court of the Fourth Department, he appealed to the Court of Appeals on the ground, among others, that he declined to answer questions relating to alleged acts of his which might be crimes, and that he was protected by the constitutional provision referred to.  The Court of Appeals, O'Brien, J., delivering the opinion, held, among other things, that the constitutional and statutory provisions (U. S. Const. art. 5; State Const. art. 1, § 6; Code Civ. Proc. § 837; Code Cr. Proc. § 10) declaring that no person shall be compelled to testify against himself in any criminal case protect a person called as a witness in any judicial or other proceeding against himself, or upon the trial of issues between others, from being compelled to disclose facts or circumstances that can be used against him as admissions tending to prove his connection with any criminal offense of which he may then or thereafter be charged, or the sources from or the means by which evidence of its commission or of his connection with it may be obtained, and discharged the relator.  People ex rel. Taylor v. Forbes, 143 N. Y. 219, 38 N. E. 303.

In 1901 a liquor tax certificate held by one Cargill was revoked and canceled because the defendant within the time allowed by law had not interposed a verified answer to the petition for its revocation denying that he had violated the law by selling on Sunday.  In commenting upon the unconstitutionality of the statute requiring the interposition of such an answer the Court of Appeals, by O'Brien, J., said:

"No law can be valid which directly or indirectly compels a party to accuse or incriminate himself or to testify by affidavit or otherwise with respect to his guilt or innocence.  In every case when he elects to remain silent with respect to any charge involving unlawful acts which are criminal or subject him to a penalty or forfeiture, that is a constitutional privilege

which the Legislature may not invade. The courts have insisted upon giving to the constitutional provision a construction broad and liberal enough to permit a citizen to remain entirely silent with respect to the truth or falsity of any criminal charge against him if he so elects, and his right to refuse to verify a pleading is as clearly within the privilege as his right to refuse to testify. The constitutional immunity from every species of incrimination may be as effectually violated by a law which compels a person to plead or deny upon oath any charge involving a criminal offense without regard to the form of the investigation as by a law compelling him to testify as a witness. The privilege of silence secured by the Constitution applies to the one case as well as the other." Matter of Peck v. Cargill, 167 N. Y. 391, 395, 60 N. E. 775, 776, 53 L. R. A. 888.

In 1903 one Lewisohn was arrested for criminal contempt of court in declining to answer, upon the ground that his answers might tend to incriminate him, certain questions put to him as a witness in a proceeding in the Court of Special Sessions against one Canfield, who was charged with conducting a gambling house. After he had declined to answer and before his arrest, the district attorney promised him immunity and brought to his attention section 342 of the Penal Code. Being adjudged in contempt, he obtained writs of habeas corpus and certiorari, which, after a hearing, were dismissed and the order of dismissal reversed by the Appellate Division. Thereupon the people appealed to the Court of Appeals. The opinion of that court, written by Bartlett, J., discussed the constitutional exemption as measured by the immunity given by section 342 of the Penal Code, and after commenting and quoting at length from People ex rel. Hackley, supra, held that certain limitations placed by that case upon the extent of the constitutional exemption were at variance with the construction placed on the fifth amendment of the Constitution of the United States by the Supreme Court of the United States in cases cited in the opinion, and thereupon adopted the larger and broader meaning ascribed to the constitutional provision in the United States courts, and so adopting it sustained the order which discharged the relator. People ex rel. Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. E. 353.

In 1908 one Ferguson, a member of a firm of stock brokers, was ordered by a representative of the State Comptroller to exhibit to such representative certain of Ferguson's private books and papers. The demand was made and sought to be justified by the provisions of section 321 of the tax law (Laws 1907, c. 324). That section provided among other things that "every person. * * * making a sale * * * of shares or certificates of stock, or conducting or transacting a brokerage business should keep or cause to be kept a just and true book of account wherein shall be plainly and legibly recorded" amongst other things, the date of, the number of shares covered by and the name of the party to such sale, etc. It further provided that such book should at all times be subject to the inspection of the Comptroller or any of his representatives. It authorized the Comptroller to inquire into and ascertain whether the tax on any transfer of stocks had been paid, and empowered him for that purpose to examine the books and papers of any person, firm, company, association, or corporation. The law then made a refusal to allow inspection of such

"books or any memorandum or record relating to such sale," etc., a misdemeanor.

These provisions were in aid of the enforcement of the collection of the tax on transfers of stock imposed by chapter 241 of the Laws of 1905. The payment of such tax was to be evidenced by adhesive stamps. The failure to pay such tax by affixing stamps as provided was made a misdemeanor. Tax Law, § 317.

The relator, Ferguson, having been taken into custody in accordance with the provisions of the tax law as for a violation thereof, sued out a writ of habeas corpus, upon which he demanded his discharge on the ground among others that the statute was unconstitutional in that it sought to make him a witness against himself in a criminal case.

Judge Hiscock, in delivering the opinion of the Court of Appeals, after stating, in substance, that the requirement for the keeping of the public book of account provided for by the statute was not violative of the Constitution, justified the refusal of the relator to produce his private books, papers, and memoranda on the reasoning of previous decisions, saying among other things:

"If the statute had in terms enacted that the Comptroller might summon and examine, under oath, the relator for the purpose of securing evidence of violations by him and his firm of the statute in order that such evidence might be used as a basis for criminal proceedings or an action to recover the prescribed penalties either then pending or thereafter to be instituted, I suppose that no one would seriously contend that it did not violate the Constitution. * * * Is the statute any less effective or obnoxious when it attempts to force the relator to produce before the Comptroller private books and papers duly identified as his, whose entries as well-established evidentiary admissions will be just as probative of any violation as any sworn testimony for the purpose of sustaining against him a criminal prosecution or the action for a penalty which the Comptroller is required to institute? The investigation is authorized; the violations are all defined; the punishment and penalties are prescribed; the duty of prosecution is laid. There is only lacking the evidence, and for any practical or substantial purpose what difference does it make whether this is secured by statements of a witness under oath or by entries from his books and papers, which are competent evidence against him without an oath?" People ex rel. Ferguson v. Reardon, 197 N. Y. 236, 90 N. E. 829, 27 L. R. A. (N. S.) 141, 134 Am. St. Rep. 871.

It will be seen that in the Ferguson Case it was invoked anticipatory to any prosecution against the relator; that in the Hackley and Taylor Cases it was invoked during the pendency of a preliminary inquiry; that in the Cargill Case it was invoked in connection with a special proceeding, and in the Sharp and Lewisohn Cases during the pendency of criminal actions; that in the Hackley, Taylor, and Lewisohn Cases it was invoked by one under subpœna; that in the Cargill and Ferguson Cases it was invoked by one not under subpœna; that in the Hackley Case it was unsuccessfully invoked because of what was held to be adequate statutory immunity, and that in the Lewisohn Case it was successfully invoked because of what was held to be inadequate statutory immunity. It will be further seen that Hackley and Lewisohn denied the sufficiency of the immunity from prosecution afforded them by statute, and that Sharp relied upon an immunity which he asserted was so afforded and which he contended

had been unlawfully denied him, while Taylor, Cargill, and Ferguson concededly had no such statutory immunity upon which to rely.

At the time of the occurrence set forth in the indictment and at the time when the statute challenged as to constitutionality required a statement from the defendant, no prosecution had been begun against the defendant, in which respect the defendant's case is similar to the Ferguson Case and in the defendant's case, like the case of Taylor, Cargill, and Ferguson, there is concededly no statute affording him immunity from prosecution based upon a criminality which might be evidenced in whole or part by the statement required from him, and his case differs from the cases cited alone in the circumstance that the statement which this defendant was required to make was to be oral and unsworn. In the cases cited something under oath was sought to be elicited, save in the Ferguson Case, where incriminatory unsworn documentary evidence was required to be produced.

[5] As a test of the constitutionality of a law requiring a person to say or produce something, considered in the light of the provision exempting from self-accusation is whether that something required to be said or produced is receivable in evidence, it is immaterial whether that demanded is an oral statement provable as an admission against interest or a document receivable in evidence for like reason.

In the statute now under consideration a person, after the happening of an event, is required as stated to make an oral unsworn statement. The event is one upon which the criminal liability of such person may be predicated. Such person is one in whose presence and under whose observation a fact occurred. He is therefore prima facie competent to testify to the same and for this reason one described by the word "witness" as used in the Constitution. The statement is required to be made in either one of two contingencies, namely, (a) where the occurrence is due to the culpability of the one required to make the statement; and (b) contrastively where it is due to accident. It not being required when the injury is unconsciously, as distinguished from knowingly, inflicted, the making of it imports knowledge of the occurrence and consciousness of its culpability where culpable, and, but for the provision requiring such statement to be made as well when the injury is accidental as when culpable, the mere making of the statement would import an admission of culpability.

The circumstance that the statute also requires the statement to be made where the injury inflicted is due to accident—that is to say, without conscious culpability—and that, therefore, it may conceivably be required where no criminal liability attaches to the defendant from the occurrence, does not make the statute constitutional, for it is sufficient to render it obnoxious to the constitutional provision that the statement required to be made may under some circumstances be self-accusatory or tend to establish a criminal liability or subject the maker to criminal prosecution. It is not necessary to its unconstitutionality that it should inevitably have this effect.

The first count in the indictment alleges that the injuries inflicted by the occurrence respecting which the defendant's statement was re-

quired were occasioned by the defendant's culpability. As the demurrer admits this, among other facts competently alleged, it follows that in the case at bar the statement would have been required from the defendant because of his conscious culpability, and therefore the making of the statement would have furnished not merely evidence of the defendant's identity with the operator of the vehicle, and in that connection a link in the chain of evidence against him in the event of his criminal prosecution, but also evidence of admitted culpability.

It is elementary that, when a person is injured in person or property and such injury appears to have been caused by the act or omission of another, the circumstances as ascertained attending the infliction of such injury may indicate a civil and possibly also a criminal liability on the part of such other because of such other's apparent connection with its infliction. Where for the reason that they indicate criminal liability a criminal action is begun, the public prosecutor must prove as prerequisites to a lawful conviction, first, the identity of the person prosecuted with the person causing the injury; and, second, the latter's criminal culpability with respect to the same. The first, like any other relevant fact, may be proved by the admission of the person prosecuted. When so proved, such fact becomes a link in the chain of evidence against him. Thus a person is injured upon a public highway, and thereafter dies from the effects of such injury. The injury causing death results from the violent contact of a motor vehicle either directly or indirectly with the body of the person killed. The circumstances discovered by the public authorities indicate that such contact was due either to some act or some culpable negligence on the part of the person operating the motor vehicle. The question arises, Who was that person? and it thereupon transpires that under the penalties of the challenged statute such person has said to a police officer in the vicinity of the place where the injury was inflicted, not an eyewitness to the occurrence: "I am the man. I operated the motor vehicle which caused the injury. My address is such a street and such a number, and this is my operator's license number." The admission so made as an evidentiary fact is testified to by such officer before a grand jury, and, in conjunction with other evidence, it produces an indictment. That indictment conceivably charges murder in the first degree (People v. Darragh, 141 App. Div. 408, 126 N. Y. Supp. 339), possibly manslaughter in its first degree, and, if not, manslaughter in its second degree. A trial of the one indicted follows, and there again such person's statement to the officer to the effect that he was the man who operated the motor vehicle upon the occasion stated in the indictment becomes a link in the chain of evidence against him, connecting him with the occurrence as therein alleged.

It follows that the man making the statement, whether such statement import conscious culpability or merely his connection with the occurrence, has been compelled, in the absence of any statutory immunity against prosecution, to be a witness against himself in a criminal case. Such was the nature of the statement required from this demurrant under penalty of conviction of felony should he omit

to make it. He has omitted to accuse himself, and the indictment assailed is the pleading initiating the criminal action for his conviction of felony for such omission.

These considerations lead to the conclusion that, while the facts in the case at bar are dissimilar from those in the cases cited, they show, if anything, a more obvious infraction of the constitutional provision. In reaching this conclusion the extent of the police power of the state is recognized. The right under it to enact as well-considered regulations for the public safety in connection with the operation of motor vehicles upon public highways license and other requirements which have for their object the identification of those violating the motor vehicle law is conceded. People v. MacWilliams, 91 App. Div. 176, 86 N. Y. Supp. 357. It is one thing to require operators of motor vehicles to carry identifying indicia before such persons have broken the law, and quite another to demand either that they make self-accusation in case of infringement or furnish in such case a link in a chain of criminatory evidence against themselves. The former can be lawfully done. The latter violates the Constitution.

Having reached the conclusion that the statute under which the indictment is found is repugnant to section 6 of article 1 of the Constitution of the state, and that for this reason the amended demurrer must be sustained, it becomes unnecessary to consider the question as to whether the indictment sufficiently alleges the offense sought to be charged.

Demurrer sustained.