UNITED STATES v. LOMBARDO.

(District Court, W. D. Washington, N. D.   November 10, 1915.)

No. 3117.

1. WITNESSES ⊜293—SELF-INCRIMINATION—EFFECT OF STATUTORY PROTEC-
TION.

White Slave Traffic Act June 25, 1910, c. 395, § 6, 36 Stat. 826 (Comp.
St. 1913, § 8817), requires every person keeping any alien woman or girl
in any house or place for the purpose of prostitution, or for any other
immoral purpose, to file with the Commissioner General of Immigration
a statement in writing setting forth certain facts, and provides that any
such person failing to file such statement shall be guilty of a misdemean-
or, that no person shall be excused from furnishing the statement on the
ground that it might tend to criminate him, but that no person shall be
prosecuted "under any law of the United States" on account of anything
truthfully reported in such statement.   Rem. & Bal. Code Wash. §§ 2440,
2688, make it an offense to keep a house of prostitution, or to place a
female therein with intent that she shall live a life of prostitution.  *Held*,
that section 6 violates Const. U. S. Amend. 5, providing that a party shall
not be compelled in any criminal case to be a witness against himself, as
a party harboring an alien for the purpose of prostitution is thereby re-
quired to furnish evidence which could be used against her in a prosecu-
tion for a violation of the state laws.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1009–1014;
Dec. Dig. ⊜293.]

2. CRIMINAL LAW ⊜113—VENUE OF OFFENSES—OFFENSES AGAINST UNITED
STATES—"FILE."

As Act March 3, 1891, c. 551, § 7, 26 Stat. 1085 (Comp. St. 1913, § 954)
as amended by Act March 2, 1895, c. 177, 28 Stat. 780 (Comp. St. 1913, §
955), fixes the office of the Commissioner of Immigration at Washington,
D. C., the offense of failing to file with such Commissioner the statement
required to be filed by Act June 25, 1910, § 6, was committed at Washing-
ton, D. C., and the District Court for the Western District of Washington
had no jurisdiction of a prosecution therefor, since the word "file" means
to deliver to the office, and mailing the statement is not a filing thereof;
a paper being filed when it is delivered to the proper official and by him
received and filed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 190, 232;
Dec. Dig. ⊜113.

For other definitions, see Words and Phrases, First and Second Series,
File.]

Albino Lombardo was indicted for an offense.  On demurrer to the
indictment.  Demurrer sustained.

Clay Allen, U. S. Atty., and Winter S. Martin, Asst. U. S. Atty.,
both of Seattle, Wash., for the United States.

Samuel A. Wright, of Seattle, Wash., and Frank H. Kelley, of Ta-
coma, Wash., for defendant.

NETERER, District Judge.   [1] The indictment charges a viola-
tion of section 6 of the White Slave Traffic Act of June 25, 1910, 36
Stat. at Large, pages 826, 827.   The sufficiency of the indictment is
challenged by demurrer.   The defendant contends that by section 6
of the act, supra, she is required by statements in writing to incrim-

inate herself under the criminal laws of Washington, and is deprived of her protection under the Fourth and Fifth Amendments, and that the saving provision of section 6, supra, granting immunity from prosecution under "any law of the United States," is not as broad as the provisions of the amendments, and therefore abridges her rights. In this connection it may be said that the laws of Washington make keeping a house of prostitution an offense punishable by fine and imprisonment. Sections 2688 and 2440, Rem. & Bal. Codes of Washington. If the defendant was harboring the party charged in the indictment for the purposes of prostitution, and she made the statement required by section 6, supra, she would be furnishing evidence which could be used against her in the prosecution for a violation of the laws of Washington.

Is the requirement a violation of the Fifth Amendment, which provides that a party "shall not be compelled in any criminal case to be a witness against himself" (herself)? The immunity granted by section 6 of the act is not as broad as the constitutional provision. Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. In this case Justice Blatchford said that it was not possible that the meaning of this constitutional provision was limited to a case against the party himself. It seems that the Counselman Case applies directly to the issue here. Courts must jealously guard the rights guaranteed to accused persons, and save to them the constitutional protection. The Supreme Court, in Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, held the provisions of Revenue Act of June 22, 1874, c. 391, 18 Stat. 186, repugnant to the Fourth Amendment, which required a defendant to produce, on motion of the district attorney, his private books and papers in suits for penalties or forfeitures. In Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, the court held the protection of the Fourth Amendment to reach all alike, whether accused of crime or not, and that convictions by means of unlawful seizure or enforced confessions in violation of federal rights are not to be sanctioned by the courts, which are charged with guarding the constitutional rights, and directed the return of letters seized in violation of the protection given by the Fourth Amendment; application having been made for such return before trial. The same reason applies to the protection given by the Fifth Amendment, and to penalize the failure to give a statement which is self-incriminatory is beyond the power of the Congress.

The contention of the government that Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, is controlling, is not accepted. In the Brown Case the immunity granted by the act was held as broad as the Fifth Amendment by the majority of the Supreme Court, and this immunity amendment was passed by Congress after the decision in the Counselman Case, presumably for the purpose of meeting the objection urged in that case. The minority of the court by a dissenting opinion held the immunity provision not broad enough to meet the provisions of the Fifth Amendment. The immunity granted by this act is expressly limited to prosecutions "under the laws of the

United States," thus withdrawing the protection granted by the Fifth Amendment as to prosecutions under the state laws, and abridging the protection granted by section 9, art. 1, of the Constitution of Washington, which is not in harmony with the privileges and immunities granted to the citizens of the several states, and inhibitions placed upon the several states by the Constitution of the United States.

The Supreme Court of Missouri, in State of Missouri v. Simmons Hardware Co., 109 Mo. 118, 18 S. W. 1125, 15 L. R. A. 676, considered a similar constitutional provision with relation to the act of the Legislature of 1889 "for the punishment of pools, trusts and conspiracies," which required an officer of every corporation to inform under oath the Secretary of State, under penalty of fine and imprisonment, concerning its business with relation to said act, which it held to be in conflict with the constitutional provision that "no person shall be compelled to testify against himself in a criminal case."

In People v. Rosenheimer, 70 Misc. Rep. 433, 128 N. Y. Supp. 1093, the court held unconstitutional a statute making it a felony for the owner of any motor vehicle, with knowledge that an injury had been occasioned by the operator's negligence or accident, to fail to stop and give his name and address and number of license to the injured person, or a police officer, etc., and at page 436 of 70 Misc. Rep., at page 1096 of 128 N. Y. Supp., the court said:

"A similar provision applicable to proceedings in the federal courts is found in the Fifth Amendment to the Constitution of the United States."

The state decisions are not controlling in federal courts, and are simply referred to for the purpose of showing the trend of thought of recognized legal minds upon a like issue as here presented. The manifest purpose of the constitutional provisions of the United States and the states is to place the stamp of silence upon parties or witnesses as to self-incriminating statements, and to keep inviolate the maxim "Nemo tenetur seipsum accusare." This section, I think is violative of the express provisions of the Fifth Amendment. Answering the suggestion of the district attorney that the privilege is personal and cannot be made by another, it is sufficient to say that the record discloses that the right is asserted by the defendant personally in her own behalf.

[2] The second contention of the defendant, that the court has not jurisdiction, must also be sustained. The gist of the offense is the failure "to file with the Commissioner General of Immigration" a statement, etc. By Act March 3, 1891, c. 551, § 7, 26 Stat. at Large, page 1085, as amended by Act March 2, 1895, c. 177, 28 Stat. page 780, the office of the Commissioner of Immigration was created and his office fixed at Washington, D. C. The government contends that the offense was a continuing one, and extended from this district to Washington, D. C., and that the filing of the statement need not be at the office in Washington, but may be deposited in the post office of the United States, addressed to the Commissioner General, and this forwarding through the usual course of mail should be considered as "filing," and that the failure to post within 30 days would commence

the offense, which would be continuous. This contention cannot be reconciled with the language employed in the act. The word "file" was not defined by Congress. No definition having been given, the etymology of the word must be considered, and ordinary meaning applied. The word "file" is derived from the Latin word "filum," and relates to the ancient practice of placing papers on a thread or wire for safe-keeping and ready reference. Filing, it must be observed, is not complete until the document is delivered and received. "Shall file" means to deliver to the office, and not send through the United States mails. Gates v. State, 128 N. Y. 221, 28 N. E. 373. A paper is filed when it is delivered to the proper official and by him received and filed. Bouvier, Law Dictionary; Hoyt v. Stark, 134 Cal. 178, 66 Pac. 223, 86 Am. St. Rep. 246; Wescott v. Eccles, 3 Utah, 258, 2 Pac. 525; In re Von Borcke (D. C.) 94 Fed. 352; Mutual Life Ins. Co. v. Phinney, 76 Fed. 618, 22 C. C. A. 425. Anything short of delivery would leave the filing a disputable fact, and that would not be consistent with the spirit of the act.

The Interstate Commerce Act of February 4, 1887, c. 104, § 6, 24 Stat. 380 (Comp. St. 1913, § 8569), requires the filing of schedules of interstate rates with the Interstate Commerce Commission. The Elkins Act of February 19, 1903, c. 708, § 1, 32 Stat. 847 (Comp. St. 1913, § 8597), made the willful failure to "file" a misdemeanor, punishable in any federal court having jurisdiction within the district in which the offense was committed. Section 19 of the act (24 Stat. 386 [Comp. St. 1913, § 8590]) provides that the principal office of the Commission shall be in the city of Washington, D. C. The defendant was prosecuted in the Western district of New York, and the court, in New York Central & Hudson River Ry. Co. v. U. S., 166 Fed. 267, 92 C. C. A. 331, held that:

"The offense of failing to file the schedule with the Commission having been committed in Washington, in the District of Columbia, the * * * court of the Western district of New York had no jurisdiction."

This decision was accepted by the Department of Justice. It would seem as though this case was upon all fours with the case at bar; this being a stronger case, in view of the fact that under the provisions of the Interstate Commerce Act the Commission could hold sessions in places other than the place of its principal office.

The offense, if one was committed, was within the District of Columbia, and the defendant has the right, under the Sixth Amendment, to a public trial within that district.

The demurrer is sustained.