# United States Court of Appeals
## For the First Circuit

No. 03-2376

UNITED STATES OF AMERICA,
Appellee,

v.

ANGEL EDMUNDO SALINAS,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lynch, Circuit Judge.

Bjorn Lange, Assistant Federal Public Defender, for appellant.
Mark E. Howard, Assistant United States Attorney, with whom
Thomas P. Colantuono, United States Attorney, was on brief, for
appellee.

June 28, 2004

**SELYA**, <u>Circuit Judge</u>. Venue in a criminal case is not an arcane technicality. It involves "matters that touch closely the fair administration of criminal justice and public confidence in it." <u>United States</u> v. <u>Johnson</u>, 323 U.S. 273, 276 (1944). No reported federal court decision has addressed the question of venue in the context of a prosecution for passport fraud. Stepping onto virgin soil, we must decide whether venue for such a case can be laid in the district in which the State Department chooses to process a passport application even though that district has no other link to the offender or the offense. The district court answered this difficult question in the affirmative. We reach the opposite conclusion and hold that the relevant statutory framework does not support venue at the site of processing when that site is otherwise unconnected to either the offender or the offense. This holding requires that we reverse the lower court's venue determination and vacate the conviction that ensued.

## I. BACKGROUND

The facts relevant to the issue before us are, for all intents and purposes, undisputed. By statute, the Secretary of State has the authority to "grant and issue passports." 22 U.S.C. § 211a. The administration of this function is delegable to "passport agents." 22 C.F.R. § 51.1. Thus, passports may be obtained from the Secretary's "designated subordinates." 69A Am. Jur. 2d <u>Passports</u> § 23. That classification includes duly

-2-

designated postal employees, who have delegated authority to accept applications and administer oaths in connection therewith. See 22 C.F.R. § 51.21(b)(4) (noting that a "postal employee designated by the postmaster at a post office which has been selected to accept passport applications" is so authorized).

On March 26, 2001, defendant-appellant Angel Edmundo Salinas, a native of Ecuador, appeared in person at a post office located in Brooklyn, New York. The State Department had denominated that post office as a passport application intake station. Once there, Salinas met with a duly designated postal employee and applied for a United States passport.

To make a tedious tale tolerably terse, Salinas completed the usual paperwork, produced a bogus New Jersey birth certificate as "proof" of United States citizenship, and paid the stipulated fee. He swore before the postal employee to the truth of the information he had entered on the form (including the false statement that he was a native of New Jersey).

Following the ordinary course, the post office forwarded Salinas's application to a bank in Pittsburgh, Pennsylvania. Employees of the bank, working under a contractual arrangement with the government, entered basic biographical data derived from the application into the State Department's computer system and deposited Salinas's check into a State Department account. The bank then routed the application to a national passport center (the

Center) in Portsmouth, New Hampshire.[1] On April 12, 2001, a Portsmouth-based passport specialist sniffed out the fraud and an investigation ensued.

On November 7, 2002, a grand jury sitting in the District of New Hampshire handed up a three-count indictment charging Salinas with passport fraud in violation of 18 U.S.C. § 1542, making false statements in violation of 18 U.S.C. § 1001, and making a false claim of citizenship in violation of 18 U.S.C. § 911. Salinas moved to dismiss the indictment for lack of venue. The district court examined the indictment en gros and denied the motion. As to the passport fraud count, the court apparently concluded — we say "apparently" because the court disposed of the motion summarily, cross-referencing an earlier unpublished opinion — that venue would lie both in the district in which the application was made and in the district to which it was transferred for review.

In due season, the parties negotiated a plea agreement under which Salinas pleaded guilty to the passport fraud count while reserving his right to challenge the venue determination.

_____

[1]The State Department has established passport centers in various parts of the country. The government represents that most passport applications made in the northeastern states are processed in Portsmouth. It concedes, however, that some are sent to other centers depending on considerations such as case load and backlog. By like token, the Center has occasionally processed passport applications made as far away as California. The record contains no evidence of any set procedure for determining the processing site to which any given application will be forwarded.

<u>See</u> Fed. R. Crim. P. 11(a)(2). In exchange for this conditional plea, the government agreed to drop the other charges. The district court sentenced Salinas on the count of conviction (imposing a $500 fine and one year of probation) and dismissed the remaining two counts. This appeal ensued.

## II. ANALYSIS

The government initiates criminal prosecutions and, thus, has first crack at selecting the venue. When that choice is challenged, the government must prove by a preponderance of the evidence that venue is proper as to each individual count. <u>United States</u> v. <u>Pace</u>, 314 F.3d 344, 349 (9th Cir. 2002); <u>United States</u> v. <u>Robinson</u>, 275 F.3d 371, 378 (4th Cir. 2001). The fact that venue in the District of New Hampshire may have been proper for either or both of the other two counts lodged against the defendant has no bearing on the propriety of venue vis-à-vis the passport fraud count. The criminal law does not recognize the concept of supplemental venue.

When a defendant in a criminal case appeals from a venue determination, we review the trial court's legal conclusions de novo and its factual findings for clear error. <u>United States</u> v. <u>Scott</u>, 270 F.3d 30, 34 (1st Cir. 2001). For purposes of that review, we align the evidence of record in the light most flattering to the venue determination. <u>See</u> <u>id.</u> at 35.

It is common ground that a criminal defendant has a right to be tried in an appropriate venue. The importance of this right is emphasized by the fact that it is mentioned not once, but twice, in the text of the Constitution. See U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ."); id. amend. VI (requiring trial of a criminal case "by an impartial jury of the State and district wherein the crime shall have been committed"). Congress has further entrenched these norms by an explicit directive that limits a criminal prosecution to "a district in which the offense was committed." Fed. R. Crim. P. 18. This rule "echoes the constitutional commands." United States v. Cabrales, 524 U.S. 1, 6 (1998). The result is a safety net, which ensures that a criminal defendant cannot be tried in a distant, remote, or unfriendly forum solely at the prosecutor's whim. Seen in this light, it is readily apparent that venue requirements promote both fairness and public confidence in the criminal justice system. Johnson, 323 U.S. at 276.

The Supreme Court has formulated a set of guidelines for determining criminal venue. If the statute under which the defendant is charged contains a specific venue provision, that provision must be honored (assuming, of course, that it satisfies the constitutional minima). See Travis v. United States, 364 U.S. 631, 635 (1961); Armour Packing Co. v. United States, 209 U.S. 56,

-6-

73-75 (1908).  Otherwise, the "locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  United States v. Anderson, 328 U.S. 699, 703 (1946).  In performing this tamisage, a court must begin by "identify[ing] the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999).  If the crime consists of distinct parts occurring in different places, venue is proper where any part of the crime occurred.  See United States v. Lombardo, 241 U.S. 73, 77 (1916); Scott, 220 F.3d at 35.  Although the focus of this test is on the conduct comprising the offense, the Supreme Court has rejected the so-called "verb test" — the notion that action verbs reflected in the text of the statute should be "the sole consideration in identifying the conduct that constitutes an offense."  Rodriguez-Moreno, 526 U.S. at 280.  Rather, an inquiring court should peer at the conduct elements comprising the crime through a wider-angled lens.  See id. at 280 & n.4.

**A**

Against an unpainted backdrop — this is, as we have said, an issue of first impression in the federal appellate courts — we turn to the text of the statute of conviction.  In relevant part, the passport fraud statute forbids a person from "willfully and knowingly mak[ing] any false statement in an application for

-7-

passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws." 18 U.S.C. § 1542. The statute contains no explicit venue provision. Thus, we must assay the substantive definition of the crime in an effort to ascertain its nature and essential conduct elements. See Rodriguez-Moreno, 526 U.S. at 280; United States v. Lanoue, 137 F.3d 656, 661 (1st Cir. 1998).

Here, the plain language of the relevant portion of the statute[2] makes pellucid that a violation requires only two things: (i) the making of a false statement, (ii) with the intent to secure the issuance of a passport. See 18 U.S.C. § 1542; see also United States v. White, 1 F.3d 13, 16 (D.C. Cir. 1993). We think it follows that passport fraud is complete at the moment an applicant makes a knowingly false statement in an application with a view toward procuring a passport. See United States v. O'Bryant, 775 F.2d 1528, 1535 (11th Cir. 1985). At that point in time, the applicant has violated the statute and, therefore, committed the crime.[3]

---

[2]The statute also contains various proscriptions relating to the use of passports secured by false statements. Those "use" proscriptions are not before us, and nothing in this opinion should be construed as a holding regarding venue vis-à-vis such charges.

[3]Indeed, the government acknowledged at oral argument in this court that it would consider a violation of section 1542 ripe for

Were we to stop here, prosecution would be appropriate in the Eastern District of New York (where the criminal conduct began and where the crime was completed) but not in New Hampshire. Based on traditional principles of statutory interpretation, there is simply no justification for laying venue in a location other than the one district in which all the criminal conduct occurred. Any other result seems inconsistent with the Supreme Court's directive that criminal statutes must be construed, and venue determinations made, in light of the safeguards that the Constitution imposes. See Johnson, 323 U.S. at 276.

**B**

In an attempt to justify its choice of venue here, the government tries to characterize passport fraud as a continuing offense. This endeavor draws its essence from 18 U.S.C. § 3237(a), which provides that, in certain classes of offenses, venue may be "prosecuted in any district in which [the] offense was begun, continued, or completed." However, the applicability of the continuation language is limited to offenses "begun in one district and completed in another." Id. Accordingly, the government cannot take refuge in the continuing offense venue provision without

_____

prosecution prior to the processing of a passport application (i.e., when the oath was sworn at the post office). Salinas could have been prosecuted for passport fraud from that time forward (and, so, the crime was complete then and there). See O'Bryant, 775 F.2d at 1535. As we have said, that acknowledgment tracks the language and structure of the statute itself.

-9-

answering the logically antecedent question of whether passport fraud can be considered a continuing offense (on these facts, a crime begun in New York and completed in New Hampshire).  See Cabrales, 524 U.S. at 7; United States v. Rodriguez, 465 F.2d 5, 10 (2d Cir. 1972).

In an effort to carry this burden, the government asseverates that the crime of passport fraud is not complete until the false statement is actually communicated to a person who has authority to approve the passport application.  We find this unconvincing.  There is nothing in the statute of conviction that suggests that completion of the crime is in any way contingent upon the receipt of an allegedly false application at a processing center as opposed to receipt by the State Department's authorized agent at a post office intake station.  Section 1542 proscribes only one act:  the making of a statement.  Although communication of the statement may be powerful evidence of the intent element of the crime, the statute is devoid of any flat requirement that the statement be conveyed or communicated to an ultimate decisionmaker. This matters because courts must look at the essential conduct elements of the offense in order to ascertain the adequacy of venue.  See Rodriguez-Moreno, 526 U.S. at 279; Scott, 270 F.3d at 35.  It is, therefore, unsurprising that similarly framed statutes have been found to create point-in-time offenses, not continuing offenses.  See, e.g., United States v. Ross, 205 F.2d 619, 620-21

(10th Cir. 1953) (construing former 18 U.S.C. § 1461 and explaining that a statute criminalizing the deposit of goods in the mail delineates a crime that is complete at the moment of the deposit as long as the requisite intent is present); <u>Rodriguez</u>, 465 F.2d at 10-11 (concluding that 18 U.S.C. § 495, which prohibits uttering and publishing a forged writing with intent to defraud the United States, is a single-act crime — not a continuing offense — because the violation is complete when the forged instrument is tendered with the requisite intent).

The government tries to blunt the force of this reasoning in a myriad of ways. None of its theories is adequate to the task. First, the government argues that the crime of passport fraud falls within the penumbra of the "rule" that venue under false claim and false statement statutes is proper both where the falsehood is made and where it is received. This attempt to sidestep the plain language of 18 U.S.C. § 1542 fails because the supposed "rule" — that false claim and false statement statutes are always susceptible to multiple venues — is not a hard-and-fast rule at all. Although some decisions discuss the underlying principle in carelessly broad terms, those comments are best understood as reflecting the idea that when a statute criminalizes the making <u>and</u> presentment of false claims or statements, venue is proper either where the proffer is made or where it is received. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Leahy</u>, 82 F.3d 624, 633 (5th Cir. 1996) (adopting

-11-

this principle for application in cases brought under 18 U.S.C. § 287, which criminalizes both the making and presentment of false claims).  The passport fraud statute does not have a similar structure and (subject, of course, to the statute's intent element) criminalizes the making of a false statement, simpliciter.

In a modest variation on this theme, the government argues by analogy to other false statement and false claim statutes that passport fraud should be deemed a continuing offense.  The problem with this argument is that the purported analogies are not apt.

The government's most loudly bruited analogy is to 18 U.S.C. § 1001, which criminalizes the making of any "materially false, fictitious, or fraudulent statement" as to a matter within the jurisdiction of the federal sovereign.  It is true that courts consistently treat section 1001 crimes as continuing offenses, but that taxonomy is dictated by the terms of the statute.  Section 1001 explicitly criminalizes only those false statements that are material.  See id. When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt.  See, e.g., United States v. Ringer, 300 F.3d 788, 790-92 (7th Cir. 2002), cert. denied, 538 U.S. 981 (2003); United States v. Candella, 487 F.2d 1223, 1227-28 (2d Cir. 1973).  After all, since materiality is an element of the offense, a

-12-

defendant cannot be convicted under section 1001 unless and until such a connection can be shown.

The passport fraud statute is a horse of a different hue. That statute does not contain any materiality requirement. Moreover, courts have refused to read a materiality requirement into it. See, e.g., United States v. Hart, 291 F.3d 1084, 1085 (9th Cir.) (per curiam), cert. denied, 537 U.S. 962 (2002). Consequently, the government's attempt to draw an analogy between section 1001 and section 1542 falters in this case.

The government's proffered analogy to 20 U.S.C. § 1097 is similarly flawed. That statute criminalizes false statements that actually lead to the obtaining of federally guaranteed funds. The consummation requirement of section 1097, like the materiality requirement of section 1001, explains why courts regularly have deemed offenses thereunder continuing. See, e.g., United States v. Redfearn, 906 F.2d 352, 353-54 (8th Cir. 1990). It also explains why the proposed analogy carries no weight.

So too 18 U.S.C. § 287, which punishes whoever "makes or presents to any person or officer . . . or to any department or agency . . . any claim upon or against the United States, or any department or agency thereof." The case law teaches that, under this statute, venue lies "in either the judicial district where the fraudulent claims were prepared or mailed, or where the claims were presented." United States v. Massa, 686 F.2d 526, 528 (7th Cir.

-13-

1982). This pluralism is a direct result of the statute's disjunctive phrasing. Section 1542 does not contain any comparable language and the absence of the disjunctive means something here. Cf. Leahy, 82 F.3d at 633 (illustrating that when a statute disjunctively criminalizes the making or presentment of false claims, venue can lie either in the district where the statement is made or in the district where it is received).

The government next seeks to bolster its conclusion that section 1542 establishes a continuing offense by embracing the decision in United States v. Angotti, 105 F.3d 539 (9th Cir. 1997). There, the government charged the defendant with making false statements for the purpose of influencing the actions of bank officials. The false statements were made in the Northern District of California whereas the bank officials who approved the requested loan were located at the institution's headquarters in the Central District of California. Id. at 542. The charge was brought under 18 U.S.C. § 1014, the structure of which mimics that of 18 U.S.C. § 1542.

The Ninth Circuit held that venue was proper in the Central District of California because that was "where the communication reached the audience whom it was intended to influence." 105 F.3d at 542. In explication, the court stated that "the act of making a communication continues until the communication is received by the person or persons whom it is

-14-

intended to affect or influence." Id. at 543 (acknowledging that the "statements did not have to reach their intended destination in order to constitute a crime," but asserting that the fact that the crime could have been completed earlier did not mean that everything following completion was immaterial to the determination of venue). The court found it irrelevant whether the defendant knew the identity or location of the individuals whom he sought to influence. Id.

Angotti is of dubious precedential value even in the circuit of its birth. See United States v. Marsh, 144 F.3d 1229, 1242 (9th Cir. 1998) (limiting Angotti). Furthermore, it is distinguishable on the facts — unlike in Salinas, there was evidence that Angotti knew his application had to be forwarded somewhere for approval. Last — but far from least — the case was decided prior to the Supreme Court's clarification of the standards anent venue in Rodriguez-Moreno and Cabrales. We believe Angotti is inconsistent with those decisions and we find its reasoning unpersuasive. Accordingly, we decline to follow it.

The government's final argument on this point is that delivery to an intermediary (here, the post office intake station) does not complete the offense. We dismiss this argument out of hand. For one thing, the post office is not a mere third-party intermediary (if it were, the result here might be different). The postal employee with whom Salinas dealt was the Secretary of

State's duly designated agent.  See 22 C.F.R. §§ 51.1, 51.21(b).
For another thing, we already have determined that reaching a
particular audience is not a component of a section 1542 violation;
although it may be strong evidence of intent, it is not an element
of the offense.

## C

The government has one last arrow in its quiver.  It
contends that a crime can be both complete and continuing for
purposes of venue analysis.  As a theoretical matter, that
proposition is true.  See, e.g., United States v. Cores, 356 U.S.
405, 408-09 (1958); Candella, 487 F.2d at 1228.  For  example, a
wrongdoer has completed the crime of kidnaping sufficiently to
ground a conviction upon the event of abduction.  If, however, the
wrongdoer travels with his victim from state to state, venue will
lie in any district along the way.  See Rodriguez-Moreno, 526 U.S.
at 281 (noting that kidnaping is a "unitary crime" which, once
begun, does not end until the victim is free).  The proposition is
not, however, universally applicable, so the question remains
whether the crime of passport fraud fits within the specialized
confines of the "complete yet continuing" rubric.

The government posits that even though the crime of
passport fraud may be complete when a false application is
submitted, it is a continuing offense because the defendant's
intent to procure a passport through fraudulent means does not

achieve a point of culmination until the application reaches a person who has the authority to issue the passport. Accepting this view of passport fraud as a crime that continues even after completion would, in our judgment, require a significant (and unwarranted) expansion of the law of venue. We explain briefly.

As said, 18 U.S.C. § 1542 creates a classic point-in-time offense: at the moment that an applicant makes a false statement with the intent to procure a passport, the crime is complete. See O'Bryant, 775 F.2d at 1535. The only way that passport fraud conceivably could be an offense that continues even after completion would be if the general requirement of intent were read to create a continuing offense. Such a reading is impermissible. The range of venue alternatives should be dictated by the language of the statute under which the defendant is charged — and the statute at issue here, 18 U.S.C. § 1542, requires intent only at the moment the false statement is made. Allowing specific intent to continue a crime into any district in which that intent has consequences would significantly expand the range of permissible venues. This would be unwarranted because such an expansion would effectively authorize the government to choose a venue of its liking even when, as now, the crime was complete before a second district was implicated and the statute of conviction contains no materiality or consummation requirement.

To cinch matters, Congress has not provided any hint that it intended venue in such a situation to extend beyond the place of the false statement. That Congress knew how to expand the scope of venue through the substantive definition of the crime cannot be gainsaid. See, e.g., 18 U.S.C. § 287 (criminalizing the making or presentment of false information); id. § 1001 (criminalizing false statements that are material). In view of this knowledge, Congress's silence takes on an added significance. See, e.g., Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 176-77 (1994); United States v. Brennan, 183 F.3d 139, 148 (2d Cir. 1999). We are neither inclined nor empowered to displace a legislative choice by extending the permissible sites of prosecution through inventive interpretation.

We add, moreover, that the Supreme Court has forged a connection between venue and conduct elements. See, e.g., Rodriguez-Moreno, 526 U.S. at 279. In general, this connection means that a criminal defendant's own actions will determine where venue can be laid. Expanding venue for passport fraud in the way that the government suggests would unhinge this connection and give the government unfettered control of determining where passport applicants can be tried. In our view, this would frustrate the Supreme Court's insistence that the determination of venue be tied to the substantive definition of the crime. It would also offend our bedrock conviction that "[t]he venue requirement is designed to

-18-

prevent a criminal defendant from having to defend himself in a place that has no meaningful connection to the offense with which he is charged." United States v. Santiago, 83 F.3d 20, 24 (1st Cir. 1996). For these reasons, we reject the government's vision of passport fraud as a crime that can be both complete and continuing.

**D**

The upshot is that the plain language of 18 U.S.C. § 1542 makes passport fraud a point-in-time offense, which can be prosecuted at the place of the false statement but not at some different place where the government, unbeknownst to the defendant, has opted to process the application. This determination devolves from our construction of the statute and evinces our unwillingness to torture the statutory text in an effort to expand the list of permissible sites of prosecution. Congress is, of course, free (within constitutional limits) to alter this situation by amending section 1542 and changing the substantive definition of the crime. Cf. Brennan, 183 F.3d at 148 (discussing a particular circumstance in which Congress modified the definition of a crime so as to permit more expansive venue).

## III. CONCLUSION

Over time, one of the primary concerns motivating the limitation of venue has been the danger of allowing the government to choose its forum free from any external constraints. See, e.g.,

-19-

<u>Travis</u>, 364 U.S. at 634 ("[V]enue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of a tribunal favorable to it.") (citation and internal quotation marks omitted). This risk would become a reality were we to accept the government's argument that the District of New Hampshire is a legally permissible venue for the prosecution of the instant charge. Under such a rule, the government could opt to process a passport application at any place (Alaska, say, or Guam), no matter how inconvenient for the defendant, and then mount a prosecution at that location. That would be antithetic to the Supreme Court's venue jurisprudence.

We need go no further. For the reasons discussed above, we reverse the district court's venue determination, vacate Salinas's conviction, and remand with instructions to dismiss the indictment without prejudice for lack of venue.

**<u>Reversed and remanded</u>**.