United States v. Muratoski                04-CR-179-SM   04/08/05   P

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

   v.                                        Case No. 04-cr-179-SM
                                            Opinion No. 2005 DNH 061
Adil Muratoski


**O R D E R**


   Defendant moves to transfer venue in this criminal case to the Northern District of Illinois (Chicago), where he lives and works.  For the reasons set forth below, that motion is granted.


**Standard of Review**

   A district court has broad discretionary power to transfer a criminal prosecution to another district "for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b).  In exercising that discretion, courts generally consider a number of factors identified by the Supreme Court in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964).  Those factors include: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of

documents and records likely to be involved; (5) the disruption of defendant's business if the case is not transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket condition of each district or division involved; and (10) any other special considerations relevant to transfer. Id. at 243-44. No one factor is likely to be dispositive, but all should be considered under the circumstances:

> It is unlikely that any one of these factors will be present by itself in a particular case. Ordinarily the various factors appear in combination, with some pointing in favor of transfer and others against transfer. It is incumbent on the court in such a case to strike a balance and decide which factors seem to be of greatest importance in that case.

2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 344 at 275.

## Background

This is one of a number of prosecutions brought in the District of New Hampshire for either passport fraud (18 U.S.C. § 1542) or, more recently, false statements made in connection with a passport application (18 U.S.C. § 1001). The trend away

2

from charging passport fraud and toward charging § 1001 violations for substantially the same conduct is traceable to the court of appeals' decision in United States v. Salinas, 373 F.3d 161 (1st Cir. 2004). In Salinas the court held venue is improper in this district in passport fraud cases which involve an application that was mailed from out of state to the National Passport Center in Portsmouth, New Hampshire. But, the court also expressed the view that venue would be proper here if the conduct were charged as a false statement offense under § 1001 - the distinction being that passport fraud is a completed offense "at the moment an applicant makes a knowingly false statement in an application with a view toward procuring a passport," Salinas, 373 F.3d at 165 (citing United States v. O'Bryant, 775 F.2d 1528, 1535 (11th Cir. 1985)), while § 1001 offenses are generally considered continuing offenses, with the material misrepresentation "continuing into the district in which the effects of the false statement are felt." Salinas, 373 F.3d at 167 (citations omitted).

So, basically, the government avoids the venue problem associated with passport fraud prosecutions by simply reindicting

the underlying conduct as a § 1001 violation or, post-Salinas, initially indicting conduct that would be chargeable as passport fraud as a § 1001 violation instead.

Creative charging no doubt serves legitimate purposes, and there are some practical reasons for bringing these cases in New Hampshire. For one, the Passport Center's location here necessarily means that many violations are routinely identified in this district. Relevant documents are generally found here (applications, supporting statements, etc.), as are potential government witnesses. And, local prosecutors entertain a legitimate pragmatic concern that prosecutors in other districts may not be so willing to pursue these cases, given the disparity in caseloads and available resources.

On the other hand, it has become clear to this court that the defendants indicted on these charges often live hundreds of miles away, have no personal contacts at all with this district, are poor or just getting by economically, are supporting families, and must pay substantial sums to travel to and stay in New Hampshire on multiple occasions (e.g., to meet with counsel

4

and to attend arraignment, bail hearings, motions hearings, plea hearings or trial, and possibly a sentencing hearing). Additionally, if witnesses are to be called by a defendant, whether at trial or sentencing, they are more likely to be located near the defendant's home than here, making their appearances in this district difficult and burdensome.

## Discussion

Venue in this district is plainly proper, given the continuing nature of the § 1001 offense charged. See 18 U.S.C. § 3237(a). See also Salinas, 373 F.3d at 166-67. Nevertheless, defendant has met his burden of persuading the court that a transfer is warranted.

Considering the Platt factors, it is of course a physical, emotional, and economic hardship for this defendant to face trial in New Hampshire, far from his home in Illinois. See United States v. Aronoff, 463 F. Supp. 454, 457 (S.D.N.Y. 1978). Defendants, ordinarily, should be tried where they reside. United States v. Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984). Besides, it is more than a mere inconvenience for this defendant

5

to face trial in this district, given his financial circumstances (he has been unable to pay his initially retained counsel and is now represented by the Federal Defender).  Travel from Illinois is expensive and generally requires overnight accommodations. Defendant also has parenting responsibilities in Illinois, where his two minor sons live.

The location of witnesses also favors transfer.  To be sure, some of the witnesses the government is likely to call are employed at the Passport Center, but those witnesses can easily travel at no expense to them.  Defendant's witnesses, whether at trial or, equally importantly, at sentencing in the event of a conviction or plea, will likely be from the Chicago area and their attendance in New Hampshire will not be as easily or as inexpensively obtained, even assuming the government will provide transportation and lodging.  Certainly, conducting defendant's criminal trial in this district would place a substantial burden on any witnesses he chose to call.  See generally Aronoff, 463 F. Supp. at 458.

The location of events likely to be at issue also militates in favor of transfer. Defendant lives in the Chicago area, no doubt prepared the passport application at issue in Illinois, made the alleged misrepresentations there, and submitted the application there. This is not a paramount factor in this case, of course. But, on balance, the government's discovery of the alleged false statement in this district is not so critical as to warrant trial here. Similarly, that documents likely to be used at trial are located in New Hampshire is of little moment, given the ease with which they may be transmitted to Illinois. See, e.g., United States v. Posner, 594 F. Supp. 475, 478 (S.D.N.Y. 1982) ("The location of documents and records is not a major concern in these days of easy and rapid transportation.").

Defendant's likely loss of income and/or employment if he were tried in this district is another factor that counsels in favor of transfer. See Russell, 582 F. Supp. at 663; Aronoff, 463 F. Supp. at 459. Defendant works at a diner and the burden associated with traveling to attend proceedings in New Hampshire necessarily interferes with his ability to earn wages necessary to support himself and his family. The amount at issue may be

7

modest, but it is, no doubt, critical to the defendant, particularly given his indigence.

> [T]he disruptive impact upon defendants' businesses by trial in this district, also favors transfer. Each of the defendants, although qualifying for CJA counsel, [is] either marginally employed or own and operate struggling businesses. . . . Defending criminal charges should not include the penalty of financial ruin where the trial might be conducted properly and legally in a forum near defendants' homes and businesses.

United States v. Haley, 504 F. Supp. 1124, 1128 (E.D. Pa. 1981).

Similarly, the expense to defendant of trial in New Hampshire militates in favor of transfer. If his trial were to proceed in this district, he would be required to pay for travel, lodging, and subsistence while in New Hampshire. He does not have family or friends here with whom he could reside. It is, of course, true (as the government argues) that defendant could easily waive his appearance at various stages of the proceedings. But, he ought not be forced to make that choice due to the geographic distance between his home and the place of indictment and the costs associated with traveling here.

Defendant is currently represented by a New Hampshire Assistant Federal Defender, at public expense, while the government is represented by an Assistant United States Attorney. Without a doubt, appointed counsel can just as easily be provided to defendant in Chicago as here and, importantly, defendant will have much easier and more effective access to counsel where he lives. Similarly, the government will be as ably represented in Chicago as it is here, and it probably will prove more convenient to the government, as well, to have the defendant close by. In any event, the government's inconvenience is "a factor given little weight when other considerations of convenience suggest transfer." United States v. Gruberg, 493 F. Supp. 234, 243 (S.D.N.Y. 1979).

On balance, then, the court is persuaded that the Platt factors counsel in favor of transferring this criminal proceeding to a venue closer to defendant's home in Illinois. As the Court of Appeals for the Second Circuit has observed:

> Recognizing the unfairness and hardship to which trial in an environment alien to the accused exposes him, and the important policies underlying the venue provisions of the Constitution and Bill of Rights, the Supreme Court has declared that venue statutes should, whenever

9

possible, be construed so to permit trial at the
residence of the defendant.

United States v. Cashin, 281 F.2d 669, 675 (2d Cir. 1960) (citing

United States v. Johnson, 323 U.S. 273, 275 (1944)).


## Conclusion

These cases will likely raise venue transfer issues somewhat
routinely.  Nevertheless, a systemic approach to resolving those
issues is probably not appropriate, given the unique
circumstances of each individual defendant.  Government counsel,
however, can readily identify those cases that ought to be
brought where the defendant lives, and indict here only those
cases in which transfer is not likely to be ordered.


In this particular case, having considered the Platt
factors, the court is persuaded that defendant's case ought to be
transferred to the Northen District of Illinois both for the
convenience of the defendant and witnesses, and in the interest
of justice.  Defendant's motion to transfer venue (document no.
12) is, therefore, granted.


10

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 8, 2005

cc:  Mark S. Zuckerman, Esq.
     Jeffrey S. Levin, Esq.
     U.S. Marshal
     U.S. Probation

11