UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America,

    v.                                           Case No. 04-cr-225-1-SM
                                                 Opinion No. 2005 DNH 072
Mama-Tidjani Mamadou,


**O R D E R**


    Defendant moves to transfer venue in this criminal case to the United States District Court for the Southern District of New York, where he lives and works, pursuant to Fed. R. Crim. P. 21(b).


    Like United States v. Muratoski, No. 04-cr-179-SM, Opinion No. 2005 DNH 061, this is one of a number of prosecutions brought in the District of New Hampshire for either passport fraud (18 U.S.C. § 1542) or, more recently, false statements made in connection with a passport application (18 U.S.C. § 1001). As noted in Muratoski, the recent trend away from charging passport fraud, in favor of charging § 1001 violations instead for substantially the same conduct, is explained by the First Circuit's decision in United States v. Salinas, 373 F.3d 161 (1st

Cir. 2004). In Salinas the court held venue to be improper in this district in passport fraud cases involving an application mailed from out-of-state to the National Passport Center located in Portsmouth, New Hampshire. In that same opinion, however, the court suggested that venue would be proper here if the criminal conduct were charged as a false statement offense under § 1001 - the distinction being that passport fraud is a completed offense "at the moment an applicant makes a knowingly false statement in an application with a view toward procuring a passport," Salinas, 373 F.3d at 165 (citing United States v. O'Bryant, 775 F.2d 1528, 1535 (11th Cir. 1985)), while § 1001 offenses are generally considered continuing offenses, with the material misrepresentations "continuing into the district in which the effects of the false statement are felt." Salinas, 373 F.3d at 167 (citations omitted).

So, basically, the government is avoiding the venue problem in passport fraud cases by indicting (or sometimes reindicting) the underlying passport fraud conduct as a § 1001 violation. The government has its reasons for doing so. Not coincidentally, many such violations are discovered here, given the location of a

National Passport Center in this district.  The relevant documents (applications, supporting statements, etc.) wind up here, and potential witnesses from the passport center are also found in this district.  In addition, prosecutors may feel that the commitment to prosecuting these cases may not be as strong in other districts as it is here.

As discussed in Muratoski, supra, venue transfer motions in these cases ought to be considered individually, given the unique circumstances faced by each defendant.  Although it is tempting to fashion a systemic rule, the sui generis nature of each defendant's circumstances counsels an individualized, case-by-case approach.

Because passport applications and renewal applications can literally come to New Hampshire from all over the country, defendants indicted here in connection with those applications often live hundreds of miles, and several states, away, with no personal connections to New Hampshire at all.  They are often poor, or just getting by, and usually face some form of deportation action as well as prosecution.

3

While venue is proper in New Hampshire if the underlying conduct is charged as a § 1001 violation, transfer of the case to another district may, nevertheless, be appropriate "for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b). In exercising the discretion to transfer criminal cases, courts consider a number of factors identified by the Supreme Court in Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240 (1964).

Applying the Platt factors here, I find that defendant has met his burden of persuading the court that a transfer is warranted. Defendant lives and works in the Bronx, New York City. His family, including his wife and two small children, is there, as is his marginal small business. Defendant appears to be economically disadvantaged (he is represented by an Assistant Federal Defender), and, of course, he would suffer not only a financial burden, but an emotional and physical hardship as well, if defendant were required to travel to New Hampshire to meet with counsel, attend pretrial hearings and face trial. Defendant would be required to cover expenses for travel, lodging and subsistence on each occasion, and would not be able to work.

4

While such expenses are, to many, comparatively modest, they are not modest to one of modest means.

The location of witnesses also favors transfer. Government witnesses from the passport center can easily travel to New York at no expense to them. But defense witnesses (at trial or sentencing) are likely to be from New York and their attendance here in New Hampshire will not be as easily or conveniently obtained (even assuming the government will pay for transportation and lodging). Witnesses also lose time from work when they are required to travel long distances from home, and their lives are disrupted by travel in many other ways. All in all, the balance falls in favor of having government employees travel involuntarily, rather than private citizens, other factors being equal.

Documents and exhibits can easily be transported from New Hampshire to New York. See, e.g., United States v. Posner, 594 (F.Supp. 475, 478 (S.D.N.Y. 1982) ("The location of documents and records is not a major concern in these days of easy and rapid transportation.")

Defendant's likely economic loss also counsels in favor of transfer.  See <u>United States v. Russell</u>, 582 F.Supp. 660, 663 (S.D.N.Y. 1984).  Defendant operates a marginal "99-cent store" in the Bronx, and "barely takes a salary."  He apparently qualified for appointed counsel.  Travel to New Hampshire would involve far more time away from wage-earning work than trial in New York.

Defense counsel can just as easily be appointed for defendant in New York as here, and defendant will have much easier, convenient, and effective access to counsel where he lives.  No doubt the government will be as ably represented in New York as it is in this district.

As the Court of Appeals for the Second Circuit aptly observed:

> Recognizing "the unfairness and hardship to which trial in an environment alien to the accused exposes him," and the important policies underlying the venue provisions the Constitution and Bill of Rights, the Supreme Court has declared that venue statutes should, whenever possible, be construed so to permit trial at the residence of the defendant.

6

United States v. Cashin, 281 F.2d 669, 675 (2d Cir. 1960) (citing United States v. Johnson, 323 U.S. 273, 275 (1944).

## Conclusion

Having considered the Platt factors, the court is persuaded that, like Muratoski, defendant's case ought to be transferred to the Southern District of New York for the convenience of the defendant and witnesses, and in the interest of justice. Defendant's Motion to Transfer Venue (document no. 8) is hereby granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 27, 2005

cc:  Mark A. Irish, Esq.
     Jonathan R. Saxe, Esq.
     U.S. Probation
     U.S. Marshal