# United States Court of Appeals
## For the First Circuit

No. 18-1519

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY SEWARD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Barron, Stahl, and Lipez,
Circuit Judges.

Inga L. Parsons, with whom Law Offices of Inga L. Parsons was
on brief, for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with
whom Andrew E. Lelling, United States Attorney, was on brief, for
appellee.

July 28, 2020

**STAHL**, **Circuit Judge**. This appeal arises out of an order denying a motion to dismiss filed by Defendant-Appellant Anthony Seward, a state sex offender who moved from Massachusetts to New York and failed to update his registration as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). Seward was indicted in Massachusetts for his failure to register. He moved to dismiss the indictment on the ground that venue in Massachusetts was improper, relying principally on the Supreme Court's decision in Nichols v. United States, 136 S. Ct. 1113 (2016). Seward argued that under Nichols, he had committed no crime in Massachusetts because his failure to register occurred entirely in New York.

The district court denied Seward's motion to dismiss, concluding that Nichols did not address the question of venue. The court further found interstate travel to be a necessary element of a § 2250 offense and, as such, determined that venue was proper in Massachusetts, where Seward's interstate travel began. After careful review, we affirm. We thus join the all but one of our sister circuits who have reached this issue to conclude that venue for a § 2250 prosecution is proper in the departure jurisdiction.

## I. Facts and Procedural Background

### A. SORNA

SORNA was enacted by Congress in part to "make more uniform what had remained 'a patchwork of federal and . . . state

registration systems,' with 'loopholes and deficiencies' that had resulted in . . . sex offenders becoming 'missing' or 'lost.'" Nichols, 136 S. Ct. at 1119 (quoting United States v. Kebodeaux, 570 U.S. 387, 399 (2013)). As such, SORNA requires that every "sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a). It further requires that an offender "shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction" of the change. Id. § 20913(c).

Section 2250(a) of SORNA makes failing to register a crime punishable by a fine or a prison term of up to 10 years, or both. 18 U.S.C. § 2250(a). Under the statute, whoever "(1) is required to register under [SORNA]; (2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law . . . ; or (B) travels in interstate or foreign commerce . . . ; and (3) knowingly fails to register or update a registration as required by [SORNA]" is subject to penalties. Id.

**B.    Seward's Failure to Register**

The facts are not in dispute. Seward was convicted as a sex offender in 1996 under Massachusetts state law and was therefore subject to the registration requirements set forth by

SORNA. See 34 U.S.C. §§ 20911-20932. Seward initially registered as a sex offender in Massachusetts. In 2016, Seward moved from Massachusetts to New York, where he established residence. He subsequently failed to update his registration as required by SORNA.

On January 19, 2017, a District of Massachusetts magistrate judge issued an arrest warrant as to Seward for failing to register as a sex offender in violation of § 2250(a). Seward was arrested several days later. On March 9, 2017, a federal grand jury returned an indictment charging that Seward, "being an individual required to register under [SORNA], traveled in interstate commerce and knowingly failed to register and update his registration as required by [§ 2250]."

On July 20, 2017, Seward moved to dismiss the indictment on the ground that Massachusetts was an improper venue and the district court thus lacked jurisdiction over his prosecution. Seward contended that under Nichols, venue in Massachusetts was improper because no violation of SORNA had occurred there. In doing so, he relied significantly on the Seventh Circuit's 2-1 decision in United States v. Haslage, 853 F.3d 331 (7th Cir. 2017), which interpreted Nichols to preclude prosecution for § 2250 violations in an offender's departure jurisdiction.

At an August 10, 2017 hearing, the district court denied Seward's motion. The district court determined that Nichols did

not "answer[] the venue question" and explicitly "disagree[d] with" the Haslage majority's analysis, concurring instead with the dissent's conclusion there that under the "preexisting Supreme Court precedent," specifically, Carr v. United States, 560 U.S. 438 (2010), interstate travel is a "necessary element" of a § 2250 charge. Accordingly, the district court analyzed venue under 18 U.S.C. § 3237(a), which states that for offenses begun in one district and completed in another, venue is proper "in any district in which such offense was begun, continued, or completed." As such, the court concluded venue was proper in Massachusetts, where Seward's travel began.

On August 20, 2017, Seward unsuccessfully moved for reconsideration of the district court's ruling. On May 21, 2018, Seward entered a conditional guilty plea as to the § 2250(a) charge, reserving his right to appeal the denial of his motion to dismiss for lack of venue. On May 31, 2018, Seward was sentenced to a term of time served, which had been approximately sixteen months, and five years of supervised release. This timely appeal as to the question of venue followed.

## II. Analysis

### A. Standard of Review

"When a defendant in a criminal case appeals from a venue determination, we review the trial court's legal conclusions de novo and its factual findings for clear error." United States v.

<u>Salinas</u>, 373 F.3d 161, 164 (1st Cir. 2004).  Since the sole question before us is one of law -- whether venue in the departure jurisdiction is proper for a § 2250 prosecution -- we review the district court's denial de novo.

## B. Venue

As this court has not yet opined on the question before us, we proceed "[a]gainst an unpainted backdrop" with an analysis of foundational venue principles guiding our inquiry.  <u>Id.</u>

A criminal defendant must be tried in the state or district in which the offense "shall have been committed."  U.S. Const. art. III, § 2, cl. 3; <u>see also</u> <u>id.</u> amend. VI (requiring trial "by an impartial jury of the State and district wherein the crime shall have been committed").  Congress "further entrenched" this principle in the Federal Rules of Criminal Procedure, which include "an explicit directive that limits a criminal prosecution to 'a district [where] the offense was committed.'"  <u>Salinas</u>, 373 F.3d at 164 (quoting Fed. R. Crim. P. 18).

Where a criminal statute "contains a specific venue provision, that provision must be honored" so long as it comports with Constitutional requirements.  <u>Id.</u> (citing <u>Travis</u> v. <u>United States</u>, 364 U.S. 631, 635 (1961); <u>Armour Packing Co.</u> v. <u>United States</u>, 209 U.S. 56, 73-75 (1908)).  Where, as here, the statute contains no such provision, the "locus delicti [of the offense] must be determined from the nature of the crime alleged and the

location of the act or acts constituting it." United States v. Anderson, 328 U.S. 699, 703 (1946); see United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). In making such a determination, a court must "identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." Rodriguez-Moreno, 526 U.S. at 279. For offenses that span multiple jurisdictions, or "where a crime consists of distinct parts which have different localities[,] the whole may be tried where any part can be proved to have been done." Id. at 281 (quoting United States v. Lombardo, 241 U.S. 73, 77 (1916)); see also Salinas, 373 F.3d at 164. And under the federal statute governing venue for "[o]ffenses begun in one district and completed in another," such continuing offenses "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

In determining the nature of the crime for purposes of venue, the "focus of this test is on the conduct comprising the offense." Salinas, 373 F.3d at 164. The Supreme Court has rejected in such an analysis dispositive reliance on "the so-called 'verb test' -- the notion that action verbs reflected in the text of the statute should be 'the sole consideration in identifying the conduct that constitutes an offense.'"[1]  Id.

---

[1] Courts deploying the "verb test" analyze "'the key verbs in the statute defining the criminal offense' to find the scope of

- 7 -

(quoting Rodriguez-Moreno, 526 U.S. at 280).  In doing so, however, the Court also explicitly recognized that "the 'verb test' certainly has value as an interpretative tool."  Rodriguez-Moreno, 526 U.S. at 280.  To this end, it made clear that its concern with an overreliance on action verbs was not that this would produce an overinclusive result, but rather, that requiring the presence of an action verb to define the nature of the crime could sweep out conduct not enumerated by such action language but nonetheless essential to the offense.  See id. ("[The verb test] cannot be applied rigidly, to the exclusion of other relevant statutory language.  The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed.").  Thus, while we may not focus exclusively on § 2250's action verbs, we are permitted to consider them as part of the "wider-angled lens" through which we "should peer at the conduct elements comprising the crime." Salinas, 373 F.3d at 164 (citing Rodriguez-Moreno, 526 U.S. at 280 & n.4).

Grounded by these principles, we now apply them to the case at hand.

---

relevant conduct."  United States v. Georgacarakos, 988 F.2d 1289, 1293 (1st Cir. 1993) (quoting United States v. Tedesco, 635 F.2d 902, 905 (1st Cir. 1980)).

## C. Venue for Seward's Section 2250 Prosecution

Using this framework, our task today is to determine the nature of a § 2250 crime -- or, put differently, to conclude where Seward's offense "began." See United States v. Holcombe, 883 F.3d 12, 16 (2d Cir. 2018). Though we have not yet reached this question, all but one of our sister circuits to have done so have held that venue for a § 2250 prosecution of a state sex offender is proper in the departure jurisdiction because the locus delicti of the offense encompasses where the offender's travel begins.[2] See id. at 15-16; United States v. Kopp, 778 F.3d 986, 988 (11th Cir. 2015); United States v. Spivey, 956 F.3d 212, 216-17 (4th Cir. 2020); United States v. Howell, 552 F.3d 709, 717-18 (8th Cir. 2009)); United States v. Lewis, 768 F.3d 1086, 1092-94 (10th Cir. 2014); cf. United States v. Lewallyn, 737 F. App'x 471, 474-75 (11th Cir. 2018) (per curiam) (holding Nichols does not abrogate Kopp); but see Haslage, 853 F.3d at 335-36 (finding venue in the departure jurisdiction improper in reliance on Nichols).

Like our sister circuits, we are guided in answering this question by the Supreme Court's decision in Carr, in which the Court considered whether a defendant could be convicted under § 2250 for interstate travel that predated the effective date of

---

[2] We note that Kopp, Lewis, and Howell were decided prior to the Supreme Court's decision in Nichols. However, as analyzed infra, because Nichols neither abrogates Carr nor is dispositive as to the question of venue, we view these decisions as good law.

SORNA. 560 U.S. at 456-58. In answering this question, the Court first determined that § 2250(a) contains three distinct elements, which must be satisfied sequentially: for a state sex offender like Seward, the government must prove (1) that he was required to register under SORNA; (2) that he traveled in interstate or foreign commerce; and (3) that he knowingly failed to register or update a registration as required by SORNA. See id. at 445-46. The Court then analyzed the "interstate travel" element, characterizing it as "the very conduct at which Congress took aim" and "an aspect of the harm Congress sought to punish" in enacting § 2250. Id. at 453-54. As the Court concluded, "[t]aking account of SORNA's overall structure, we have little reason to doubt that Congress intended § 2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." Id. at 456. Accordingly, pursuant to Carr, "[t]he majority of our sister circuits that have addressed the issue have held that a SORNA offense begins . . . in the district that the defendant leaves, not in the district . . . in which the defendant ultimately fails to register." Holcombe, 883 F.3d at 15 (citing Kopp, 778 F.3d at 988-89; Lewis, 768 F.3d at 1092-94; Howell, 552 F.3d at 717-18); see Spivey, 956 F.3d at 216-17; Lewallyn, 737 F. App'x at 474-75.

To circumvent the Court's decision in Carr and the weight of persuasive authority from other circuits, Seward contends that

- 10 -

we should instead follow the novel approach taken by the Seventh Circuit in Haslage, a 2-1 decision that relied principally on the Court's decision in Nichols v. United States. See 853 F.3d at 335-36. In Nichols, the defendant, a federal sex offender,[3] left his residence in Kansas and moved to the Philippines, where he failed to register. See 136 S. Ct. at 1117. Nichols was prosecuted in Kansas for the failure to register as required by § 2250. Id. He moved to dismiss the indictment on the grounds that he was not required under SORNA to update his registration in Kansas, but did not contest venue. Id. The Court held that SORNA did not require Nichols to update his registration in Kansas once he no longer resided in the country. Id.

In Haslage, a divided Seventh Circuit panel applied Nichols to hold that venue for a § 2250 prosecution is not proper in the departure jurisdiction. See 853 F.3d 331. As the court there determined, in light of Nichols, interstate travel is "neither a distinct crime nor an element of the crime," and therefore is not "conduct that is part of the offense."[4] Id. at

---

[3] For federal sex offenders, interstate travel is not an element of a § 2250 offense. See 18 U.S.C. § 2250(a)(2)(A) (travel element does not apply to those convicted of a sex offense "under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States").

[4] The dissent determined that Nichols did not abrogate the Court's conclusion in Carr that interstate travel is a required element of a § 2250(a) offense for state sex offenders and thus concluded that "[b]ecause the interstate travel -- an element of

- 11 -

333, 335. Seward asserts that the Seventh Circuit's ruling in Haslage demonstrates that Nichols changes the venue analysis for SORNA prosecutions, and that it is no longer correct to find venue in the departure jurisdiction. Accordingly, he contends that under Nichols, a § 2250 violation occurs only after a sex offender reaches his new residence and fails to timely register. Seward also argues that Carr does not apply to his case because it did not address venue and further, that the Court's discussion there of § 2250's travel element is merely dicta. For the reasons below, we do not agree.

The first error in Seward's strained reliance on Nichols is that Nichols involved a federal sex offender, not a state sex offender like Seward. 136 S. Ct. at 1116-17. Federal offenders, unlike state offenders, "do[] not need to travel interstate to commit a SORNA offense." Holcombe, 883 F.3d at 16; see 18 U.S.C. § 2250(a)(2)(A). This distinction is critical: as a result, the Nichols Court had no occasion to and, indeed, did not, address § 2250's interstate travel element, either independently or with respect to its bearing on the "nature" of a § 2250 violation for state offenders. Nichols therefore "did not abrogate the holding in Carr that the element of interstate travel was the 'very conduct

_____

the offense -- began in Wisconsin, venue is proper in district court in Wisconsin." Id. at 338 (Sykes, J., dissenting).

- 12 -

at which Congress took aim.'"[5]  Spivey, 956 F.3d at 216 (quoting

Carr, 560 U.S. at 454).

Second, Nichols did not address venue, but rather concerned only whether Kansas was an "involved" jurisdiction under SORNA such that Nichols was required to update his registration there once he moved abroad.[6]  136 S. Ct. at 1116.  Therefore, not only did Nichols not address the interstate travel element at all, it also did not opine on the relationship between interstate travel and venue.  We thus concur with the all but one of our sister circuits to have evaluated Nichols in the context of venue to conclude that it does not bear on our venue analysis.  See Holcombe, 883 F.3d at 15-16; Lewallyn, 737 F. App'x at 474; Spivey, 956 F.3d at 216; but see Haslage, 853 F.3d at 335.

Our dissenting colleague does not contest that Nichols did not concern venue, pertained only to federal (not state) sex offenders, and accordingly did not address whether the interstate travel element of § 2250 is part of the nature of the crime.  See infra Section I.  Our colleague also lodges his disagreement with

---

[5] Additionally, Nichols involved travel from Kansas to the Philippines, which "is not a 'jurisdiction' under SORNA; no foreign country is."  136 S. Ct. at 1117.  Indeed, it "in no way considered or ruled on the issue of where a trial should be held when a registered sex offender leaves a district and fails to register in another district that is an 'involved jurisdiction' for purposes of SORNA."  Lewallyn, 737 F. App'x at 473.

[6] The parties agree that Seward was not required by SORNA to register in Massachusetts after he moved to New York.

the rationale of the only circuit to have interpreted <u>Nichols</u> to find venue improper in the departure jurisdiction. <u>See</u> <u>infra</u> Section III.C.3. However, the dissent nonetheless suggests that a reading of <u>Nichols</u>, taken in conjunction with a particular line of Supreme Court precedents, leads to the conclusion that the true "nature" of § 2250 entirely reads out interstate travel and is merely the "failure to do a legally required act." <u>Infra</u> Section I. This conclusion has several fatal flaws: namely, it misapplies its cited "failure-to-act" cases, misreads <u>Nichols</u>, and ignores squarely on-point precedent in <u>Carr</u>.

The failure-to-act cases referenced by the dissent are distinguishable on the facts. To begin, each of these decisions concerned a statute without an interstate travel element. <u>See</u> <u>Anderson</u>, 328 U.S. at 705-06 (criminalizing the refusal of induction into the armed services in violation of the Selective Training and Service Act); <u>Lombardo</u>, 241 U.S. at 74-75 (criminalizing the failure to file a required statement under the Mann Act); <u>Travis</u>, 364 U.S. at 636-37 (criminalizing filing false documentation under the National Labor Relations Act); <u>Johnston</u> v. <u>United States</u>, 351 U.S. 215, 216 (1956) (criminalizing the refusal of conscientious objectors to report for civilian employment). Here, however, as analyzed above, interstate travel is not only an element of the instant crime (as the dissent so concedes), but part of "the very conduct at which Congress took aim." <u>Carr</u>, 560

- 14 -

U.S. at 454. In this way, Carr makes clear that Seward's travel was not merely "conduct . . . preceding the failure to register," as the dissent suggests, but rather conduct of particular concern to Congress. See id. By contrast, the Court in Anderson and Johnston ruled out as locus delicti of the crimes at issue locations in which the defendant had not engaged in any conduct that satisfied an element of the crime. See Johnston, 351 U.S. at 220-21 (noting that venue is "determined by the acts of the accused that violate a statute" and finding venue proper "in the vicinage of the crime rather than the residence of the accused" (citing Anderson, 328 U.S. at 705)). Neither case held that when a statute imposes criminal liability for failing to comply with a duty to undertake a legally required act, venue necessarily lies exclusively where the duty must be met. Those cases thus tell us little about where venue lies when a defendant, like Seward, first satisfies an element of an offense that involves a failure to comply with a duty (here, registering as a sex offender) by engaging in certain conduct in one jurisdiction (here, through interstate travel), and then ultimately fails to comply with that duty in another. Here, again, the question before us is whether Seward's interstate travel was part of the nature of the particular crime at issue -- a § 2250 offense. For the reasons discussed, we hold that it is.

The dissent also misrepresents the Court's holding in Lombardo. There, a defendant from Washington State harbored an immigrant woman for the purpose of prostitution and subsequently failed to file a required statement with the Commissioner General of Immigration in violation of the Mann Act. 241 U.S. at 73-75. The Court concluded that the defendant could only be prosecuted where the Commissioner's office was located -- namely, Washington, D.C. -- and not in Washington State, where the defendant was located and could have mailed the required statement from. 241 U.S. at 77-78. The dissent implies strongly that the Lombardo Court in reaching its conclusion considered the fact that the harboring took place in Washington State and rejected such harboring as part of the relevant offense, even though in the same breath the dissent concedes that the Court never explicitly considered the harboring element. See infra Section I n.3. To be clear, the Lombardo Court nowhere addressed the question of whether the harboring could render venue proper in Washington State. Rather, it focused its inquiry squarely on the "filing" requirement, reasoning that to "file" as written in the statute meant to deliver to the office, not send through the mails; as such, "filing" could only take place in Washington, D.C.[7] Id. at

---

[7] Indeed, it is in this context that the Court agreed with the lower court's conclusion that "[t]he gist of the offense [was] the failure to file" the required statement with the Commissioner -- not to reject the prospect that the act of harboring could

- 16 -

76-79. Further, as the dissent too concedes, the question of whether harboring conferred venue was not before the Lombardo Court because the government there did not argue that it was. Moreover, as Lombardo itself explains, "where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." Id. at 77.

Thus, finding Nichols not dispositive as to the venue question, we return to the question of whether Carr, read in conjunction with foundational venue jurisprudence, renders venue for Seward's prosecution proper in Massachusetts. Carr undoubtedly makes clear that interstate travel is an element of a § 2250 violation for state sex offenders. See 560 U.S. at 445-46 (listing interstate travel as one of § 2250's "three elements"); Holcombe, 883 F.3d at 15. We must now decide whether Carr indicates that the locus delicti for this offense encompasses the departure jurisdiction and thus grounds venue there. For the reasons below, we find that it does.

The Court's discussion in Carr of § 2250's travel element points to the conclusion that the "offense" described in § 2250 is not merely a failure to register, but rather, a course of conduct that begins with interstate travel. There, the Court

_____

constitute part of the relevant offense, but rather to emphasize that filing, rather than mailing, was the required conduct. Id. at 76 (internal quotation mark omitted).

- 17 -

explicitly rejected the argument that the interstate travel element merely provided a jurisdictional hook, emphasizing that "[t]he act of travel by a convicted sex offender may serve as a jurisdictional predicate for § 2250, but it is also . . . the very conduct at which Congress took aim," 560 U.S. at 454, and "an aspect of the harm Congress sought to punish," id. at 453.

Indeed, the Court's language in Carr makes clear that it viewed interstate travel as a key step in the process by which sex offenders slip through cracks in monitoring and enforcement. See id. at 456 ("[W]e have little reason to doubt that Congress intended § 2250 to do exactly what it says:  to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." (emphasis added)); see also id. at 452 (state sex offenders have violated SORNA when they "use the channels of interstate commerce in evading a State's reach" (emphasis added)); id. at 453 ("Congress in § 2250 exposed to federal criminal liability . . . [persons] who threaten the efficacy of the statutory scheme by traveling in interstate commerce." (emphasis added)).  This language, emphasizing that interstate travel is a critical mechanism by which potential § 2250 offenders "evade" or "elude" a state's enforcement reach, begs the conclusion that Congress was concerned not merely with a failure to register, but also the interstate travel preceding it.

The conclusion that both the interstate travel and failure to register elements are part of the nature of the § 2250 offense is bolstered further by the Carr Court's holding that the elements of § 2250 must be read sequentially:

> A sequential reading [of the elements]. . . helps to ensure a nexus between a defendant's interstate travel and his failure to register as a sex offender. Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under § 2250 even if they had not left the State after being convicted -- an illogical result given the absence of any obvious federal interest in punishing such state offenders.

Id. at 446. The Court's emphasis on the necessary "nexus" between a state offender's interstate travel and his ultimate failure to register reveals its understanding that Congress was concerned not only with the failure to register, but rather the precise problem that arises when an offender departs one state and moves to another -- neither with accurate knowledge of his whereabouts.

We also recognize the bedrock principle that "[a] court's lodestar in interpreting a statute is to effectuate congressional intent." City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020); see also Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982) (noting the courts' "task is to give effect to the will of Congress"); Passamaquoddy Tribe v. Maine, 75 F.3d 784, 788 (1st Cir. 1996) ("The chief objective of statutory interpretation is to give effect to the legislative will."). And

in ascertaining the meaning of a statutory provision, we "must . . . interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'" Abramski v. United States, 573 U.S. 169, 179 (2014) (quoting Maracich v. Spears, 570 U.S. 48, 76 (2013)). Examining the legislative history behind both SORNA generally and § 2250 in particular provides further support that interstate travel is part of the nature of a § 2250 offense.

SORNA includes many subsections aimed at "establish[ing] a comprehensive national system for the registration of [sex] offenders." Carr, 560 U.S. at 455 (second alteration in original) (quoting 42 U.S.C. § 16901, which later became 34 U.S.C. § 20901). These include "maintain[ing] sex-offender registries that compile an array of information about sex offenders, . . . mak[ing] this information publicly available online, . . . [and] shar[ing] the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex-offender registry." Id. at 455-56 (citations omitted). Indeed, a reading of the legislative history reveals that the system set forth in SORNA was designed to combat what Congress saw as "[t]he most significant enforcement issue in the sex offender program[,] . . . that over 100,000 sex offenders . . . are 'missing,'" a problem explicitly linked to interstate travel because "[t]his typically occurs when the sex offender moves from one State to another." H.R. Rep. No.

109-218, pt. 1, at 26 (2005), quoted in Carr, 560 U.S. at 454. Indeed, because, as the Court has recognized, "[t]he Act's express purpose is to protect the public from sex offenders and offenders against children[,] . . . . SORNA covers more sex offenders, and imposes more onerous registration requirements, than most States had before." Gundy v. United States, 139 S. Ct. 2116, 2121 (2019) (plurality opinion) (citation and internal quotation marks omitted). Thus, as the Supreme Court recognized in Carr, § 2250 is best read as being "embedded in a broader statutory scheme enacted to address deficiencies in prior law that had enabled sex offenders to slip through the cracks." 560 U.S. at 455.

The Court also importantly observed in Carr that Congress' drafting of § 2250 shows it intended to "handle federal and state sex offenders differently," and "to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders." Id. at 452. This focus emphasizes the states' particular interest in recordkeeping related to state offenders like Seward who move in "the channels of interstate commerce" and subsequently fail to register as required. Id. The record makes clear that Massachusetts expended resources to ascertain Seward's whereabouts, such as deploying law enforcement when his location became unknown and issuing a warrant for his arrest. Massachusetts was unaware that Seward had moved across state lines precisely because of his failure to register in New

York; a proper registration there presumptively would have, under SORNA, triggered a notification to Massachusetts that Seward had relocated.[8] See 34 U.S.C. § 20923(b), (b)(3) ("[I]mmediately after a sex offender registers or updates a registration, an appropriate official in the jurisdiction shall provide the information in the registry . . . about that offender to . . . each jurisdiction from or to which a change of residence, employment, or student status occurs."). New York undoubtedly had an interest in knowing that Seward resided within it. But Massachusetts too retained an interest in knowing Seward's whereabouts. Untethering the interstate travel and failure-to-register elements from one another divorces Massachusetts entirely from that interest.[9]

Seward's interstate travel and subsequent failure to register therefore frustrated both a goal of SORNA generally, to establish a system to monitor and locate missing sex offenders, and the goal of § 2250 in particular, "to subject to federal

---

[8] We find puzzling the dissent's emphasis that a public official, not an offender, is responsible for notifying other relevant jurisdictions of a change in residence. Presumably, such an official only becomes aware of an offender's change in residence once said offender has notified the appropriate authorities as required by SORNA.

[9] We do not suggest, as the dissent contends, that state interests supersede individual interests in a venue inquiry. Rather, we reference Massachusetts's interest in knowing Seward's whereabouts, an interest the dissent concedes as valid, as yet further support for our conclusion that the nature of Seward's § 2250 offense necessarily encompasses interstate travel.

prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." Carr, 560 U.S. at 456. It is thus and again unsurprising that all but one of our sister circuits to have addressed this question have applied Carr to conclude that the locus delicti of a § 2250 offense "consists of both traveling and failing to register." Kopp, 778 F.3d at 989 (emphasis added); see Holcombe, 883 F.3d at 15-16 ("The offense begins where the interstate journey begins, regardless of whether the defendant had already formed an intent to violate the statute when the interstate travel began."); Spivey, 956 F.3d at 216 ("[U]nder Carr, the element of 'interstate travel' is an essential conduct element for a conviction under § 2250(a)."); Lewallyn, 737 F. App'x at 475 ("Venue was proper in Georgia, where Lewallyn began the offense that he completed by failing to register in North Carolina."); but see Haslage, 853 F.3d at 335-36.

Finally, we are persuaded yet further by the fact that the relevant element of § 2250 in question -- "travels in interstate commerce" -- contains an active verb ("travels"). While this cannot itself circumscribe § 2250's locus delicti, see Rodriguez-Moreno, 526 U.S. at 280, it is in our view another thumb on the scale weighing in favor of finding interstate travel part of the nature of a § 2250 offense. This is especially true given the Court's concern in Rodriguez-Moreno that "certain conduct prohibited by statute will be missed" in an analysis of the nature

of a given offense -- not that such conduct would be accidentally included in it.[10]  Id. (emphasis added).

Accordingly, we hold that because the nature of the offense reveals that its locus delicti encompasses the departure jurisdiction, venue for Seward's prosecution was proper in Massachusetts.[11]  See Holcombe, 883 F.3d at 16 ("Interstate travel

---

[10] We do not, however, suggest that a conduct element must always or automatically define the nature of a given offense. Contra Spivey, 956 F.3d at 215-16 (concluding that only conduct, not circumstance, elements are relevant in determining the nature of an offense).  Rather, we reserve the possibility that an anterior or jurisdictional element, for example, may not be considered part of the nature of a given crime for purposes of determining venue even if it is considered to be a "conduct" element.

[11] The dissent also poses a series of hypothetical scenarios which it claims illustrate that our holding today flouts constitutional venue principles.  See infra Section II.B-C, III. These scenarios are not before us and are somewhat fanciful, and extended discussion of them is not warranted.  We note in passing, however, that such prosecutions would necessarily be constrained by precisely the venue principles that the dissent identifies, such as the requirement that "a criminal defendant cannot be tried in a distant, remote or unfriendly forum solely at the prosecutor's whim."  Salinas, 373 F.3d at 164.  We also find it possible -- but do not so hold today -- that constitutional concerns about Congress's power under the Commerce Clause may also preclude us were such scenarios before us from construing this offense to encompass a defendant like the dissent's hypothetical leaf-peeper, who may have traveled in interstate commerce before failing to register but whose travel did not -- in a but-for causation sense -- trigger the registration duty, as Seward's did.  These concerns about the scope of the commerce power thus may require the interstate travel element to be read narrowly to include a but-for causation constraint and preclude the provision from being used to criminalize such travel.  Cf. United States v. DiTomasso, 621 F.3d 17, 26 (1st Cir. 2010) (discussing whether § 2250 falls under Congress' authority under the Commerce Clause), vacated on other grounds, 565 U.S. 1189 (2012); United States v. Parks, 698 F.3d 1, 7 (1st Cir. 2012) (same); compare United States v. Lopez,

- 24 -

requires a departure from one State just as much as arrival in another.").

For the reasons above, the judgment of the district court is <u>affirmed</u>.

**-Dissenting Opinion Follows-**

---

514 U.S. 549, 558-59 (1995) (discussing the limits of the commerce power), <u>with</u> <u>Gonzales</u> v. <u>Raich</u>, 545 U.S. 1, 23-25 (2005) (discussing the limits of <u>Lopez</u>).

**LIPEZ**, **Circuit Judge, dissenting**.  I agree with my colleagues on the legal framework for our venue analysis.  As acknowledged by the majority, and reaffirmed repeatedly by the Supreme Court, "the locus delicti[12] must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  United States v. Anderson, 328 U.S. 699, 703 (1946) (footnote added); see United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999); United States v. Cabrales, 524 U.S. 1, 6-7 (1998).  We part ways, however, on the application of this principle to 18 U.S.C. § 2250.  In my view, based on a close examination of the text and structure of the statute, its placement in a comprehensive legislative scheme, and the Supreme Court's venue precedents, the interstate-travel element is not part of the nature of the crime.  Rather, the nature of the crime defined by § 2250 is the failure to register or update a registration, such that venue is proper only where that failure occurs.  Accordingly, I would vacate Seward's conviction and hold that venue for prosecuting Seward was not proper in Massachusetts.

---

[12] Locus delicti is Latin for "place of the wrong," and it means "[t]he place where an offense was committed."  Black's Law Dictionary (11th ed. 2019).

- 26 -

To determine the nature of the § 2250 offense, I look first to the text of SORNA and the key Supreme Court case interpreting that text, Nichols v. United States, 136 S. Ct. 1113 (2016). SORNA requires that a sex offender keep his or her registration current by, "not later than 3 business days after each change of name, residence, employment, or student status, appear[ing] in person in at least 1 jurisdiction involved . . . and inform[ing] that jurisdiction of all changes in the information required for that offender in the sex offender registry." 34 U.S.C. § 20913(c) (previously at 42 U.S.C. § 16913). The statute defines "jurisdiction involved" as one "where the offender resides, where the offender is an employee, and where the offender is a student." Id. § 20913(a).

A sex offender who fails to comply with SORNA's registration requirements may be criminally prosecuted pursuant to 18 U.S.C. § 2250, which reads:

> (a) In general. --Whoever--
>
> (1) is required to register under [SORNA];
>
> (2)(A) is a sex offender [under SORNA] by reason of a conviction under Federal law . . ., the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

> > (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> > (3) knowingly fails to register or update a registration as required by [SORNA];
>
> > shall be fined under this title or imprisoned not more than 10 years, or both.

Sub-section 2(A) applies to people convicted of federal sex offenses -- the government must prove only that they are subject to SORNA and knowingly failed to register. Sub-section 2(B) applies to people convicted of state sex offenses (like Seward). For them, the government must prove that they are subject to SORNA, traveled in interstate commerce, and knowingly failed to register.

In Nichols, the Supreme Court considered the interplay of these various statutory provisions. Nichols, who had previously been convicted of a federal sex offense, resided in Kansas until he abruptly left the state and moved to the Philippines. 136 S. Ct. at 1117. He was arrested overseas, brought back to the United States by federal marshals, and prosecuted in Kansas pursuant to § 2250. Id. Nichols moved to dismiss the indictment, asserting that SORNA did not require him to update his registration in Kansas. Id. Agreeing with Nichols, the Supreme Court held that Kansas was no longer a "jurisdiction involved" under 35 U.S.C. § 20913(a) because the statute defines that term as a place in which a person currently resides, works, or is a student, not a place where the person previously resided. Id. In other words,

- 28 -

Nichols had not violated SORNA, and could not be prosecuted pursuant to § 2250, because he was no longer living, working, or studying in a location covered by SORNA and therefore had no obligation to notify any jurisdiction -- including his former resident state, Kansas -- of his new residence. Nichols thus establishes, as the government concedes, that Seward had no obligation to update his registration in Massachusetts after he moved to New York.

My colleagues dismiss the relevance of Nichols to the instant case. They emphasize that Nichols did not concern venue. They note that because Nichols, unlike Seward, had been convicted of a federal sex offense, the government was not required to prove that he had engaged in interstate travel in order to convict him under § 2250, and thus Nichols did not address the question of whether the interstate-travel element of § 2250 is part of the nature of the crime. However, to know whether interstate travel is part of the nature of the crime, we must first answer that very question: what is the nature of § 2250? In answering that question, Nichols is highly instructive.

The Court in Nichols reasoned that a defendant who moves from a SORNA jurisdiction to a non-SORNA jurisdiction cannot be charged for violating § 2250 because no act is legally required in the non-SORNA jurisdiction, based on the plain language of the statute. See id. at 1117-18. This rationale suggests that the

nature of the § 2250 offense is the "failure to do a legally required act." See Johnston v. United States, 351 U.S. 215, 220 (1956). Indeed, that characterization of § 2250 is reflected in the statutory text: the title of the statute is "Failure to register."[13] And as I explain infra section II.A, in the absence of a failure to register, a state sex offender who engages in interstate travel has committed no criminal conduct.

This characterization of § 2250 puts it in the same category as other crimes that the Supreme Court has characterized as involving the failure to do a required act -- crimes like the refusal to perform a duty mandated by a draft board, analyzed in United States v. Anderson and Johnston v. United States, and the

---

[13] While "headings and titles are not meant to take the place of the detailed provisions of the text," Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co., 331 U.S. 519, 528 (1947), they remain valuable tools for resolving ambiguities in statutory text. See I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text."). Here, the statutory ambiguity lies in the absence of an explicit venue provision dictating the locus delicti. Thus, it is appropriate to look to the title of § 2250 to help discern the core conduct criminalized by the statute for purposes of ascertaining venue. Cf. United States v. Pendleton, 658 F.3d 299, 304 (3d Cir. 2011) (relying, in part, on the title of 18 U.S.C. § 2423(c), "Engaging in Illicit Sexual Conduct in Foreign Places," to conclude that the locus delicti of the criminal offense was the location of the illicit sexual conduct, not the place where the foreign travel preceding the illicit sexual conduct began).

failure to file a required statement under the Mann Act, analyzed in United States v. Lombardo.

Anderson addressed venue for prosecution for refusal to take an oath submitting to the draft. 328 U.S. at 701. The Court determined that the nature of the offense was "omitting to do something which is commanded to be done," and that venue therefore was proper only in the "place of performance" and "place of refusal to perform," at least where those two places were "identical." Id. at 705-06. Because taking an oath was the act "commanded to be done," venue was proper only where the defendant was required to take the oath and refused to do so, not where the draft board that recruited the defendant was located. Id.

Johnston involved a similar crime: the refusal to report for civilian employment as ordered by a draft board. 351 U.S. at 216-17. The Court recognized "the general rule that where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime," which in turn "fixes the situs of the trial." Id. at 220. Because the defendant's failure to report constituted such a crime, the Court determined that "venue must lie where the failure occurred." Id. at 222. Thus, venue was proper only where the defendant failed to report for work, not where the draft board was located. Id. at 216-22.

Lombardo is even more analogous to the issue presented here. In Lombardo, the charged crime was the failure to file a required statement under the Mann Act. 241 U.S. 73, 75 (1916). Importantly, the defendant's own conduct that triggered the filing requirement -- the harboring of an immigrant woman for purposes of prostitution -- took place in Washington state, where the defendant resided and was charged. Id. at 74-75. However, the Court expressly rejected the notion that the crime began in Washington state. Id. at 77-79. Rather, because "[t]he gist of the offense [was] the failure to file with the Commissioner General of Immigration a statement," venue was proper only in Washington, D.C., where the office of the Commissioner was located. See id. at 76 (internal quotation marks omitted) (quoting United States v. Lombardo, 228 F. 980, 982 (W.D. Wash. 1915)).

These cases strongly support the proposition that the failure-to-register element defines the nature of the § 2250 offense, and that the locus delicti of Seward's offense is therefore limited to New York, where he failed to register pursuant to SORNA's requirements. See Nichols, 136 S. Ct. at 1117 (holding that a defendant is required to register only in the new state where he took up residence, education, or employment, not the departure jurisdiction). None of these cases even hint at the possibility that the site of any conduct of a defendant preceding

- 32 -

the failure to register would be a proper venue for trying that defendant.[14]

## II.

Having reached this initial conclusion that the nature of the § 2250 offense is the failure to register, I turn my focus to the interstate-travel element and the remaining question -- whether that element should also be considered part of the nature

---

[14] The majority attempts to blunt the force of these cases by noting that none of the statutes at issue involved an interstate-travel element. Although true, that fact does not diminish the significance of the repeated invocation in these cases of "the general rule that where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." Johnston, 351 U.S. at 220. Moreover, as detailed above, and as the majority concedes, unlike the draft board cases, Lombardo did involve an anterior conduct element akin to interstate travel -- the harboring of an immigrant woman for purposes of prostitution. See Lombardo, 241 U.S. at 74. Although the Court did not explicitly consider whether that harboring element properly conferred venue, it ultimately held that the state where the defendant performed the harboring was an improper venue for the prosecution. Id. at 76-79. Contrary to the majority's insinuation, it seems highly unlikely that the Court would have affirmed the dismissal of the indictment for improper venue if the harboring element, which took place in that venue, was part of the nature of the crime. Indeed, it is telling that the government in Lombardo did not even attempt to argue that the anterior conduct of harboring conferred venue for a prosecution involving the failure to do a legally required act. Instead, the government asserted that the failure to do the required act itself (filing the required statement) began in the same state as that anterior element. See id. at 77.

of the crime.  Contrary to the majority, I answer that question in the negative.

## A.    Lack of Mens Rea Requirement

The interstate-travel element of § 2250 is stated simply: "travels in interstate or foreign commerce."  18 U.S.C. § 2250(a)(2)(B).  Importantly, the statute does not attach a mens rea requirement to the interstate-travel element.  This fact distinguishes § 2250 from other statutes in which the interstate travel itself is the predicate for the offense.  For example, 18 U.S.C. § 2423(b) criminalizes "[t]ravel with intent to engage in illicit sexual activity," and the federal murder-for-hire statute, 18 U.S.C. § 1958, criminalizes "travel in interstate or foreign commerce . . . with intent that a murder be committed . . . as consideration for the receipt of . . . anything of pecuniary value."  Congress thus chose not to criminalize travel undertaken for the purpose of evading SORNA's registration requirements.  It criminalized only the failure to register in the wake of travel, regardless of the traveler's mindset.[15]

---

[15] In United States v. Pendleton, the Third Circuit held that interstate travel was not part of the locus delicti for 18 U.S.C. § 2423(c), which stated at the time:

> Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

Nichols, again, reinforces this point. If § 2250 criminalized travel undertaken to escape SORNA's registration requirements, the defendant in that case, who "abruptly disconnected all of his telephone lines, deposited his apartment keys in his landlord's drop-box, . . . boarded a flight to Manila[, and] was a no-show at mandatory sex-offender treatment," would have certainly committed a violation of the statute. 136 S. Ct. at 1117. Instead, because the defendant had no registration obligation in his new place of residence outside the United States, his elusive travel was not part of a course of criminal conduct pursuant to § 2250.[16] Accord United States v. Haslage, 853 F.3d 331, 334 (7th Cir. 2017) ("[T]he premise of Nichols is that

_____

658 F.3d at 303-04 (quoting 18 U.S.C. § 2423(c) (2006)). The structure of § 2423(c) is nearly identical to § 2250, and the court reasoned that travel was not part of the locus delicti in part because, "while travel in foreign commerce is an element of § 2423(c), the crime itself is not complete until a person engages in illicit sex." Id. at 304. This structure distinguished § 2423(c) from § 2423(b), which criminalized "[t]ravel with intent to engage in illicit sexual conduct," and which, the court explained, "is complete as soon as one begins to travel with the intent to engage in a sex act with a minor." Id.

[16] Although Nichols did not commit a violation of § 2250, his behavior did violate a Kansas law requiring sex offenders who leave the state to update their registrations in Kansas. See Nichols, 136 S. Ct. at 1119. Accordingly, the decision in Nichols did not "create loopholes and deficiencies in SORNA's nationwide sex-offender registration scheme," id. (internal quotation marks omitted); rather, it recognized the principle that "Congress . . . ha[s] given the States primary responsibility for supervising and ensuring compliance among state sex offenders," Carr v. United States, 560 U.S. 438, 452 (2010).

- 35 -

[§ 2250] does not criminalize travel with intent to commit a crime (i.e., to fail to register), but rather the failure to register after traveling.").

The Court's analysis in Lombardo, highlighted by the majority in its unavailing effort to distinguish that case, see supra note 3, also supports the proposition that the lack of a mens rea requirement indicates that interstate travel is not part of the nature of the crime. In Lombardo, the Court rejected the government's argument that venue was proper where the defendant, if she had complied with the statute, would have mailed the required form. 241 U.S. at 77-78. The Court noted that the statute required "filing," not "mailing," and "[a]nything short of delivery would leave the filing a disputable fact." Id. at 77 (quoting Lombardo, 228 F. at 983). In a later venue case, the Court elaborated on that rationale, explaining: "Venue should not be made to depend on the chance use of the mails. . . . After mailing, the [document] might have been lost; petitioner himself might have recalled it." Travis v. United States, 364 U.S. 631, 636 (1961).[17]

---

[17] The statute in Travis criminalized "him who knowingly makes any 'false' statement 'in any matter within the jurisdiction of any department or agency of the United States.'" 364 U.S. at 635 (quoting 18 U.S.C. § 1001 (1948)). The Court held that the statute did not create a continuing offense. Id. at 636-37. Although the false statement -- an affidavit swearing that the defendant was not a Communist -- was composed and mailed in Colorado, venue was proper only in the final destination where the false filing was

The same logic applies to the interstate-travel element of § 2250 due to its lack of a mens rea requirement. After a state sex offender engages in interstate travel, his crime can be "recalled" up until the point at which he actually fails to update his registration. In other words, even if an offender intends to use his interstate travel to elude SORNA's registration requirements, if he changes his mind and performs the required registration obligation when he reaches his new state of residence, no crime has been committed. Accordingly, the lack of a mens rea requirement for the interstate-travel element indicates that Congress did not intend the place of travel to be part of the locus delicti of § 2250.

**B.    Lack of Causal Relationship Between Interstate-Travel Element and Failure-to-Register Element**

The absence of a causal relationship between the travel element and the failure-to-register element also indicates that Congress did not intend for venue to lie in the place of travel. Interstate travel will never be the "but-for cause" of a sex offender's failure to register because SORNA does not require a sex offender to update his registration after interstate travel. Instead, the requirement applies only after a "change of name,

---

made, i.e. Washington, D.C. See id. at 636 (reasoning that "[w]hen a place is explicitly designated where a paper must be filed, a prosecution for failure to file lies only at that place" (emphasis added)).

residence, employment, or student status."  34 U.S.C. § 20913(a), (c).  Pursuant to SORNA, a state sex offender is free to travel from Massachusetts to New Hampshire to go leaf-peeping without notifying any authorities.  He can even drive to Maine to spend the whole summer with his grandparents and, as long as his trip remains a vacation and not a relocation, he is not subject to any federal registration requirement.[18]  Most importantly, even if he succumbs to the beauty of the Maine coastline and decides to stay permanently with his grandparents, it is that decision -- to change his residence -- that triggers his federal registration requirement, not his preceding interstate travel.

So too here.  Seward necessarily engaged in interstate travel when he changed his residence from Massachusetts to New York, but that interstate travel did not subject him to any registration obligation; rather, it was his change in residence that triggered the obligation.  In other words, the fact that Seward's interstate travel happened to accompany his change in residence is irrelevant under SORNA's statutory framework -- all that matters is that it preceded his failure to register.  See Carr v. United States, 560 U.S. 438, 446-47 (2010) (holding that the three elements of § 2250 must be satisfied sequentially).

---

[18] Of course, he may be subject to state reporting requirements, and any violation of those requirements might constitute a crime under state law.  See supra note 5.

- 38 -

The lack of a causal relationship between the interstate-travel element and the registration obligation raises the troubling prospect that, if interstate travel were part of the locus delicti of § 2250, venue might lie in a location of interstate travel bearing no relationship whatsoever to the sex offender's failure to register, thereby running afoul of the constitutional venue protections. See United States v. Scott, 270 F.3d 30, 36-37 (1st Cir. 2001) (noting that the Constitution's venue provisions serve to prevent "government forum shopping" or the selection of a venue with "the barest connection" to the crime or the defendant).

Consider this hypothetical: a state sex offender lives in the New Jersey suburbs and commutes on the train to New York City daily. If he moves to a bigger house up the street and fails to register his change in residence with the New Jersey authorities, would we really consider New York a proper venue for a § 2250 prosecution? Interpreting the travel element as part of the nature of the crime would permit that choice.

Or consider this hypothetical from Haslage:

> [A]n offender [residing in Indiana] is subject to SORNA's registration requirements. He then moves across state lines from Indiana to Kentucky with the intent to look for a new job, and registers in Kentucky with his new address within two days. But when he gets a new job a week later, he fails to update his Kentucky registration.

853 F.3d at 334.  Under these circumstances, the state sex offender would be subject to prosecution under § 2250.  He (1) is subject to SORNA, (2) engaged in interstate travel by moving from Indiana, his "departure state,"[19] to Kentucky, and (3) failed to update his Kentucky registration after he secured a new job.  Yet, it is "a strain to imagine" that Indiana would be a proper venue for that prosecution.  Id.  Even though Indiana had a connection to this offender's change in residence (he engaged in an interstate move that began there), the offender properly performed the registration update triggered by his change in residence.  He became criminally liable under § 2250 only after he registered his new address, a full week passed, and he then got a new job and failed to report that new job to Kentucky authorities.  By that point, his interstate travel from Indiana bore no relationship to his failure to register, making Indiana a constitutionally problematic venue choice that Congress would avoid.  See FTC v. Am. Tobacco Co., 264 U.S. 298, 305-06 (1924) (rejecting a constitutionally suspect interpretation of a statute on the basis that Congress would not intend such a result).

## C.   The Problem of the "Pass-Through States"

Finding interstate travel to be part of the locus delicti also raises a constitutional concern that venue would lie in the

---

[19] I discuss the significance of the term "departure state" in greater detail infra section III.A.

jurisdictions that the sex offender passed through on the way to his final destination, even though they bear little relationship to his failure to register -- the so-called "pass-through states." For example, here, Seward might have driven through Connecticut as part of his move from Massachusetts to New York. Or instead of moving to New York, he might have moved to Florida and driven through nearly every state along the east coast to get there. If interstate travel is part of the locus delicti of § 2250, the government could try Seward in any of those jurisdictions and select the most favorable one for its prosecution, running afoul once again of the constitutional venue protections. See United States v. Johnson, 323 U.S. 273, 275 (1944) (noting that a fundamental purpose of the constitutional venue provisions is to avoid both the "abuses" and "the appearance of abuses . . . in the selection of what may be deemed a tribunal favorable to the prosecution"); United States v. Salinas, 373 F.3d 161, 164 (1st Cir. 2004) (explaining that the venue protections "ensure[] that a criminal defendant cannot be tried in a distant, remote, or unfriendly forum solely at the prosecutor's whim"). No such problem arises if we find, as I believe we must, that Congress intended venue to be limited to the location of the failure to register.

# III.

## A.    The "Departure Jurisdiction"

The majority attempts to avoid the constitutional concerns raised by these aspects of the interstate-travel element by purporting to limit its holding to the "departure jurisdiction" only, meaning here Massachusetts -- the state from which Seward departed on his way to New York where he failed to comply with the SORNA registration requirement.    However, this approach does violence to the text of the statute and ultimately does not avoid the problems that it seeks to circumvent.

The text of § 2250 gives no special treatment to the departure jurisdiction.  The interstate-travel element -- "travels in interstate or foreign commerce," 18 U.S.C. § 2250(a)(2)(B) -- says nothing to distinguish the departure jurisdiction from any other jurisdictions that the defendant travels through.  Nichols, of course, reinforces that point, with its holding that a sex offender who changes name, residence, school, or job has no obligation to update his registration in a jurisdiction where he no longer resides, receives an education, or works.  See 136 S. Ct. at 1117.

The majority opinion itself reveals the difficulty with limiting its holding to the departure jurisdiction.  It says, at times, that "interstate travel . . . [is] part of the nature of a § 2250 offense."  If interstate travel is part of the nature of

- 42 -

the § 2250 offense, how can interstate travel only matter for purposes of venue when it occurs in the departure jurisdiction? Put another way, how could Seward's travel through Massachusetts somehow be more salient than his travel through, say, Connecticut, when the text of § 2250, and the operation of SORNA, treat those two states no differently?

The majority acknowledges that "[a] court's lodestar in interpreting a statute is to effectuate congressional intent," City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020), yet it simultaneously "press[es] statutory construction 'to the point of disingenuous evasion' . . . to avoid a constitutional question," in violation of that fundamental principle, see United States v. Locke, 471 U.S. 84, 96 (1985) (quoting George Moore Ice Cream Co. v. Rose, 289 U.S. 373, 379 (1933)) (rejecting a saving construction of a statute that contorted the statutory text). The majority's approach is especially troublesome when there is a clear alternative means of avoiding these constitutional concerns and remaining true to Congress's intent, as reflected in the text of the statute: finding venue proper only where the failure to register occurs.

Moreover, even if a holding limited to the departure jurisdiction could be squared with SORNA's statutory text (and it cannot be), such a holding still does not avoid all of the concerns that I have identified. While the majority's holding will prevent

courts in our circuit from finding venue proper in the "pass-through states," it will not change the fact that, in the hypothetical posed by Haslage, the defendant could still be tried in Indiana -- the "departure state" -- even though Indiana had no relationship with the failure to register. Thus, the lack of a causal relationship between the interstate-travel element and failure-to-register element of § 2250 remains a problem even under the majority's contrived approach.

B.   **Justifying Its Holding as Constitutional As-Applied**

In its final footnote, the majority suggests that because there happened to be some causal relationship between Seward's interstate travel and his failure to register, finding venue proper in Massachusetts -- the site where his interstate travel began -- is not unconstitutional as applied here, and the constitutionally problematic future applications of its interpretation of § 2250 are problems for another day. This rationale reveals the majority's misunderstanding of both the nature of the venue inquiry and the doctrine of constitutional avoidance.

The venue analysis is not simply a means of determining whether venue was constitutionally permissible in a particular scenario. Rather, as the majority acknowledges, it is a means of discerning congressional intent about where the locus delicti should lie in the absence of an explicit statutory venue provision.

- 44 -

See Rodriguez-Moreno, 526 U.S. at 281 (looking to congressional intent about the scene of the crime to determine the locus delicti of a crime proscribing "using or carrying a firearm 'during and in relation to any crime of violence'" (quoting 18 U.S.C. § 924(c)(1) (1998))); United States v. Cores, 356 U.S. 405, 408 (1958) (explaining that the venue analysis requires courts to ascertain the type of statute "Congress is found to have created" and where venue should lie accordingly). Thus, the fact that a particular application of a statute does not raise constitutional venue concerns tells us little about congressional intent regarding the locus delicti, particularly where, as here, other applications of the statute raise such concerns. See Clark v. Martinez, 543 U.S. 371, 377-78, 380 (2005) (interpreting the Immigration and Nationality Act to bar the detention of inadmissible immigrants for longer than reasonably necessary, reasoning that Congress would not intend the statute to result in certain unconstitutional applications not present in the case before the court); Rust v. Sullivan, 500 U.S. 173, 191 (1991) (noting the foundational assumption that "Congress . . . legislates in the light of constitutional limitations").

        The majority also inverts the constitutional avoidance doctrine. It suggests that unconstitutional applications of its holding that interstate travel is part of the locus delicti can be avoided in future cases by rewriting the statute to impose a

causal-relationship requirement between the interstate-travel element and the failure-to-register element. But, in fact, the doctrine of constitutional avoidance requires the majority to do the reverse: find that interstate travel is not part of the nature of the crime -- i.e., that Congress did not intend for venue to lie in the location of interstate travel -- to avoid those unconstitutional applications of the statute that would require a rewriting. As the Supreme Court has put it,

> when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail -- whether or not those constitutional problems pertain to the particular litigant before the Court.[20]

---

[20] In Clark v. Martinez, the seven-member majority chastised the dissent for misunderstanding the doctrine of constitutional avoidance in the precise manner that my colleagues in the majority misunderstand it here. The dissent had argued that the Court should not interpret a statute to avoid unconstitutional applications that were not present in the instant case -- all that mattered, from the dissent's perspective, was that the statute was constitutional "as-applied to the plaintiff." Clark, 543 U.S. at 395 (Thomas, J., dissenting). The majority responded that the dissent

> misconceives -- and fundamentally so -- the role played by the canon of constitutional avoidance in statutory interpretation. The canon is not a method of adjudicating constitutional questions by other means. . . . It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts. . . . And when a litigant invokes the canon of avoidance, he is

<u>Clark</u>, 543 U.S. at 380-81.

## C. Misplaced Reliance on <u>Carr</u>

In its analysis of whether the interstate-travel element is part of the locus delicti, the majority improperly relies on several statements from <u>Carr</u>, all of which it misconstrues and takes out of context. Ironically, the majority chides Seward for relying on a non-venue case -- <u>Nichols</u> -- but then rests its holding almost exclusively on dicta from another non-venue case -- <u>Carr</u>.

### 1. <u>Carr</u>'s Discussion of "Nexus"

<u>Carr</u> considered whether a state sex offender could be prosecuted under § 2250 for failure to register when the interstate travel necessary for the prosecution had occurred before SORNA was enacted. 560 U.S. at 444-46. If so, the defendant there argued, § 2250 violated the Ex Post Facto Clause of the Constitution. <u>Id.</u> at 442. The Supreme Court answered the first question in the

---

not attempting to vindicate the constitutional rights of others, as the dissent believes; he seeks to vindicate his own <u>statutory</u> rights. We find little to recommend the novel interpretive approach advocated by the dissent, which would render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case.

543 U.S. at 381 (citations omitted).

negative and thus avoided reaching the second argument raised by the defendant.  Id.  It held that to convict a state sex offender of violating § 2250, the government must prove that the sex offender satisfied the statute's three elements -- being subject to SORNA, engaging in interstate travel, and failing to register -- sequentially, meaning that the interstate travel must have occurred after SORNA's enactment.  Id. at 446-47, 458.

In reaching that conclusion, the Court in Carr explained that:

> A sequential reading [of the elements]. . . helps to ensure a nexus between a defendant's interstate travel and his failure to register as a sex offender.  Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under § 2250 even if they had not left the State after being convicted -- an illogical result given the absence of any obvious federal interest in punishing such state offenders.

Id. at 446.  The majority overreads the Court's discussion of a "nexus between a defendant's interstate travel and his failure to register as a sex offender."  Id.  The nexus imposed is modest: the interstate travel must merely predate the failure to register -- otherwise, the federal government could prosecute a state sex offender who fails to register but does not even leave the state.  See id.

In making the nexus point, the Court in Carr did not surreptitiously impose some closer nexus between the interstate-

- 48 -

travel element and the failure-to-register element of § 2250 that is lacking in the statutory text. Just because the government must prove that a state sex offender's interstate travel predated his failure to register does not mean that it must also prove that the two elements were performed as part of a single course of conduct. Indeed, pursuant to the plain language of § 2250, a state sex offender's interstate travel may occur in a context completely unrelated to his change in name, residence, employment, or education, which in turn triggers his registration obligation. See supra section II.B.

This aspect of § 2250 distinguishes it from the statute at issue in Rodriguez-Moreno, which criminalized carrying or using a firearm "during and in relation to" a crime of violence. See 526 U.S. at 281. The "during and in relation to" language of the statute tethered the crime-of-violence element and the gun-use element together, criminalizing a single course of conduct that could be tried wherever the crime of violence began. Id. at 281-82. But § 2250 contains no such language tethering the interstate-travel element to the failure-to-register element. Accordingly, the majority is wrong to infer from Carr that § 2250 criminalizes "a course of conduct that begins with interstate travel." That interpretation simply cannot be squared with the statutory text.

- 49 -

## 2. Carr's Emphasis on Interstate Travel as "Conduct at Which Congress Took Aim"

The majority also seizes on Carr's statements that "[t]he act of travel by a convicted sex offender may serve as a jurisdictional predicate for § 2250, but it is also . . . the very conduct at which Congress took aim," 560 U.S. at 454, and "an aspect of the harm Congress sought to punish," id. at 453. These statements were a response to the government's argument that the interstate-travel element of § 2250 could be satisfied by travel prior to SORNA's enactment because it was merely a jurisdictional hook. Id. at 451-54. In Scarborough v. United States, the Supreme Court had held that for a statute that imposed criminal liability on any convicted felon who "possesses . . . in commerce or affecting commerce. . . any firearm," the prosecution did not have to prove post-enactment movement of the gun across state lines because the language "in commerce or affecting commerce" served only to invoke federal jurisdiction under the Commerce Clause. See 431 U.S. 563, 564, 572 (1977) (quoting 18 U.S.C. App. § 1202(a) (1970)); see also Carr, 560 U.S. at 453-54. The government saw a similarity in the jurisdictional elements of the two statutes.

The Court in Carr rejected that analogy as part of its effort to save § 2250 from violating the Constitution's Ex Post Facto Clause. See 560 U.S. at 453-54; see also id. at 442 (explaining that because it construed § 2250 as not applying to

sex offenders whose travel predated SORNA's effective date, it did not need to address whether the statute violates the Ex Post Facto Clause).  The Ex Post Facto Clause forbids "laws, whatever their form, which purport to make innocent acts criminal after the event."  Lynce v. Mathis, 519 U.S. 433, 440 (1997) (quoting Beazell v. Ohio, 269 U.S. 167, 170 (1925)).  Thus, the foundational principle behind the ex post facto prohibition is fair notice. See id. at 441.  Of course, only a person -- not a gun -- can receive notice.  Accordingly, subjecting a felon to prosecution for possessing a firearm that moved in interstate commerce prior to the felon-in-possession statute's enactment posed no ex post facto problem, but subjecting a sex offender to prosecution for engaging in an element of a crime before Congress had created that crime could create an ex post facto problem.  See Carr, 560 U.S. at 442.

        The Court in Carr, apparently operating under the assumption that "Congress . . . legislates in the light of constitutional limitations," Rust, 500 U.S. at 191, found it important that Congress "took aim" at conduct of the defendant himself through the interstate-travel element, see Carr, 560 U.S. at 454.  In order to avoid an ex post facto problem, Carr thus went to great lengths to emphasize the centrality of that conduct. But there is no reason to believe that the Court would find that aspect of § 2250 similarly important for purposes of venue or that

the Court would even make such observations about the interstate-travel element outside of the ex post facto context. Accordingly, the significance of these statements from Carr cannot be understood apart from the distinct issue presented there.

### 3. Distinction Between State and Federal Sex Offenders

As for the Carr Court's observation that Congress's drafting of § 2250 indicates that it intended to "handle federal and state sex offenders differently," id. at 452, that statement does little more than establish that interstate travel is an element of a § 2250 conviction for a state sex offender,[21] but not a federal sex offender. However, the simple fact that interstate travel is an element of § 2250 for state sex offenders does not mean that Congress intended that venue should lie wherever the state sex offender engaged in that interstate travel. The Supreme Court has specifically rejected the notion that venue lies any place where an element of a crime is committed, see Cabrales, 524 U.S. at 7-8 (reasoning that, when a "defendant acts 'after the fact' to conceal a crime," and "the first crime is an essential element of the second," the location of the first crime's commission is, nevertheless, not a "place appropriate to try the

---

[21] In this respect, I disagree with the majority in Haslage that "interstate travel is a necessary precursor, but it is neither a distinct crime nor an element of the crime." 853 F.3d at 335. Of course interstate travel is an element of the crime, but that fact does not necessarily mean that it confers venue.

'after the fact' actor") (emphasis omitted), and the majority explicitly acknowledges as much in its penultimate footnote.  Thus, the statutory distinction between state and federal sex offenders has little bearing on the question of the locus delicti for § 2250.

**4.  Carr's Reference to Sex Offenders Who "Elude" SORNA's Registration Requirements**

The majority also turns to the legislative history of SORNA and Carr's commentary on it, citing the Court's statement that "Congress intended § 2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce." 560 U.S. at 456.  This statement appears in the section of Carr in which the Court addressed the government's argument that the purpose of § 2250 is to find "missing" sex offenders.  Id. at 454-56.  According to the government in Carr, prosecuting a state sex offender under § 2250 who had engaged in interstate travel prior to SORNA's enactment was permissible because it was consistent with that asserted statutory purpose.  Id. at 454-55.

The Court rejected the premise of the government's argument by concluding that finding missing sex offenders was the purpose of SORNA generally, but not § 2250 specifically.  Id. at 455 ("The Government's argument confuses a general goal of SORNA with the specific purpose of § 2250.  Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is

embedded in a broader statutory scheme enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks."). The Court then explained:

> Taking account of SORNA's overall structure, we have little reason to doubt that Congress intended § 2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce.

Id. at 456.

Contrary to the majority's assertion, this statement does not purport to identify the site of interstate travel as the locus delicti of § 2250 for purposes of venue. As I have previously explained, see supra section II.A, § 2550 does not criminalize interstate travel undertaken to "elude" SORNA's registration requirements; rather, it criminalizes a failure to register after changing name, residence, school, or workplace in the wake of interstate travel. The real question for purposes of venue is where the defendant's act of "eluding" takes place. The answer, indisputably, is the location of the failure to register. Accord Haslage, 853 F.3d at 335. Thus, if anything, Carr supports rather than undermines the proposition that the nature of § 2250 as a failure-to-register offense means that its locus delicti is determined by the location of the failure to perform -- New York, in this case -- and not where preceding conduct that merely satisfies an element of the crime takes place.

**D.   Use of An Active Verb for Interstate-Travel Element**

The majority employs the so-called "verb test" -- the notion that active verbs in a statute define the conduct constituting the nature of the crime -- to support its conclusion that interstate travel is part of the locus delicti of § 2250.  In the majority's view, Congress's use of an active verb for the interstate-travel element -- "<u>travels</u> in interstate commerce" -- is a "thumb on the scale weighing in favor of finding interstate travel part of the nature of a § 2250 offense."  However, as the majority concedes, the Supreme Court in <u>Rodriguez-Moreno</u> expressly rejected dispositive reliance on the "verb test" for ascertaining the nature of the crime. 526 U.S. at 280.  Accordingly, although the verb test may retain value as an interpretive tool, it does not override all of the other reasons detailed above for rejecting interstate travel as part of the nature of the crime.

**IV.**

As a final justification for its conclusion that venue was proper in the District of Massachusetts, the majority cites Massachusetts's "interest in knowing Seward's whereabouts," as reflected in the state's expenditure of resources to locate Seward and a provision of SORNA unrelated to § 2250 that requires officials in a sex offender's new state of registration to notify the so-called "departure state."

No doubt Massachusetts had some interest in knowing Seward's whereabouts.  But for the purpose of the venue analysis, the majority pulls this "state interest" test out of thin air.  None of the Supreme Court precedents addressing venue even mention that general "state interests" should be factored into the venue analysis.[22]  Rather, the venue analysis itself, by assessing where the crime is committed, takes into account the interests of states in prosecuting crimes that are committed within their borders.  Thus, Massachusetts's interests in knowing Seward's whereabouts or its decision to expend resources to find him have no bearing on the question of where Seward committed a violation of § 2250.  If that violation did not happen in Massachusetts, Massachusetts's interests are irrelevant under the Supreme Court's prescribed venue analysis.  See Rodriguez-Moreno, 526 U.S. at 279 (quoting Cabrales, 524 U.S. at 6-7) (reaffirming that venue is determined by "the nature of the crime alleged and the location of the act or acts constituting it").

Indeed, the interests of Massachusetts in knowing Seward's whereabouts are protected by other federal statutory provisions, not § 2250.  As the majority points out, a separate provision of SORNA, 34 U.S.C. § 20923(b)(3), imposes a duty on "an

---

[22] Indeed, in Cabrales, the Court noted that "the venue requirement is principally a protection for the defendant" rather than an issue of state interests. See 524 U.S. at 9.

appropriate official in the jurisdiction" where the sex offender updates a registration to notify "each jurisdiction from . . . which a change of residence . . . occurs."  Notably, that duty is imposed on a public official, not on the sex offender himself.  As Nichols makes clear, federal law imposes no obligation on the sex offender to notify the departure jurisdiction of his residence change.  See 136 S. Ct. at 1117; see also Sex Offender Registration and Notification Act (SORNA), Pub. L. No. 109-248, 120 Stat. 590, 597, 600 (2006) (repealing the former federal requirement that sex offenders report a change of address to the state that they are leaving and adding the new requirement, now codified at 34 U.S.C. § 20923(b)(3), that public officials must report a new sex offender's registration to that sex offender's former state of residence).  Thus, the notification obligation imposed on public officials pursuant to 34 U.S.C. § 20923(b)(3) does not bear on the nature of § 2250.  The nature of the crime created by § 2250 is the sex offender's failure to comply with SORNA's registration requirements, and, pursuant to Nichols, that failure occurs only in a single jurisdiction:  the new residence, place of education, or place of work.

Massachusetts also has a state law that that requires sex offenders registered in Massachusetts to notify Massachusetts officials if they move out of state.  See Mass. Gen. Laws ch. 6, § 178E(i) ("A sex offender required to register pursuant to

sections 178C to 178P, inclusive, who intends to move out of the commonwealth shall notify the board not later than ten days before leaving the commonwealth."). The Massachusetts legislature has made violation of that law a crime, see id. § 178H(a), in order to protect Massachusetts's interest in knowing the whereabouts of previously registered sex offenders who abandon their Massachusetts residences. Accord Nichols, 136 S. Ct. at 1119 (noting that Nichols's failure to update his registration in Kansas when he moved out of the state was a crime under Kansas law, even if it was not a crime pursuant to § 2250). But, again, that fact tells us nothing about the locus delicti of Seward's charged offense, which was a violation of § 2250, not a violation of state law or some other provision of SORNA.

Indeed, it was the violation of those Massachusetts laws, coupled with Seward's failure to appear at his annual registration appointment at the local Massachusetts police department, that led state authorities to issue a warrant for his arrest. Thus, the "resources" that Massachusetts expended tracking down Seward were the result of his violation of state law, not his alleged violation of § 2250.

The Court in Carr emphasized that "the federal sex-offender registration laws have, from their inception, expressly relied on state-level enforcement." Carr, 560 U.S. at 452. The reliance on that state-level enforcement will always result in the

expenditure of resources in an effort to monitor sex offenders at the state level. However, the interests of a state generated by state-level monitoring have little bearing on venue for a crime that focuses on a federal registration obligation.[23] The question is where that federal obligation must be performed, and where Seward failed to perform it. The undisputed answer pursuant to <u>Nichols</u> is New York.

**V.**

"[Q]uestions of venue are more than matters of mere procedure. 'They raise deep issues of public policy in the light of which legislation must be construed.'" <u>Travis</u>, 364 U.S. at 634 (quoting <u>Johnson</u>, 323 U.S. at 276). With this fundamental principle in mind, and for the reasons explained above, I would hold that the locus delicti of § 2250 is limited to the jurisdiction in which a state sex offender fails to register and does not include any of the jurisdictions through which he travels, including the so-called "departure state." Seward should not have been prosecuted in the federal district court in Massachusetts. His motion to dismiss the indictment should have been granted. Accordingly, I respectfully dissent.

---

[23] The majority acknowledges that state interests do not supersede individual interests in the venue inquiry, yet its elevation of state interests in its analysis of § 2250 tells a different story.